COMMONWEALTH *vs.* LOUIS A. SILVIA
(and two companion cases between the same parties).

Worcester. September 25, 1961. — November 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Practice, Criminal,* Appeal with assignment of errors; Exceptions: whether error harmful, saving of exception, failure to save exception. *Evidence,* Identification of person in court room, Irresponsive answer, Conversation, Competency, Rephrased question. *Error,* Whether error harmful.

A criminal case involving a felony other than murder or manslaughter was properly before this court on an appeal with an assignment of

errors under G. L. c. 278, §§ 33A–33G, where the order subjecting the
case to such procedure was not made until after sentence but was made,
and the claim of appeal filed, within twenty days after the verdict.
[132–133]

There was no error at a criminal trial in the admission in evidence of
photographs of and testimony concerning lodgings of a person who
was neither a defendant nor a witness at the trial but whom the de-
fendant on trial used to visit and visited the day following commission
of the crime charged.   [133–134]

The record of a criminal trial disclosed no error nor harm to the defendant
in the identification by the operator of a rooming house of a lodger
while the lodger was in the dock, handcuffed, although he was not a
defendant or a witness at the trial, where the identification was mate-
rial; there was no merit in a contention by the defendant that the pres-
ence of the lodger "was an attempt by the prosecution to prove guilt
of the defendant by association."   [134–135]

An exception based upon denial of a motion to strike an answer respon-
sive to a question to which no objection had been made when it was
asked has no standing.   [136]

No error appeared at the trial of an indictment for larceny in admitting
testimony that a police officer asked the defendant after he and an
accomplice were arrested what was in a box later found to contain
stolen money, that the accomplice then said "Shut up, don't say any-
thing." "Don't say a word," and that the defendant "kept quiet."
[136–137]

An exception to the denial of a motion to strike both a question which was
admissible and the answer thereto which was largely responsive and
was competent evidence must be overruled.   [138]

There was no merit in an exception to the exclusion of a question which
was inadmissible and then was allowed in rephrased form and an-
swered.   [138]

On appeal following trial of an indictment under G. L. c. 278, §§ 33A–
33G, an assignment of error not based on an exception has no standing.
[138]

INDICTMENTS found and returned on May 4, 1960, charging
crimes committed on March 20, 1960.

The cases were tried before *Tomasello, J.*

*Arnold W. Olsson,* for the defendant.

*John F. Driscoll,* Assistant District Attorney, for the
Commonwealth.

WILKINS, C.J.   The defendant was tried and convicted
by a jury on three indictments, which respectively charged
(1) an attempt to break a safe; (2) breaking a safe; and
(3) breaking and entering a building of the Hillcrest Dairy,
Inc., in the night time with intent to commit larceny and

stealing $10,000.[1]    The verdicts were returned on June 16, 1960, and on the same day he was sentenced to imprisonment on each indictment for a term of not less than ten, nor more than twelve, years to be served concurrently at the Massachusetts Correctional Institution.   On June 23, 1960, the defendant filed motions in two cases and on June 30 in one case that these indictments be tried subject to the provisions of G. L. c. 278, §§ 33A–33G, inclusive, as amended. These motions were allowed on the respective dates of filing.   On July 5, 1960, the defendant filed a claim of appeal. He subsequently was furnished a copy of the transcript of evidence, and later filed an assignment of errors.

The Commonwealth urges that these cases are not properly here under G. L. c. 278, § 33A, as amended through St. 1955, c. 352, § 1, which provides in part:

"In any proceedings or trials upon an indictment or complaint for any felony and for any misdemeanor tried with a felony the evidence shall be taken by an official stenographer or by a stenographer appointed by the court.

"In any proceeding or trial upon an indictment for murder or manslaughter or, by order of the court, upon an indictment or complaint for any other felony, and a misdemeanor tried with such felony made subject to this and the six following sections, the evidence taken as above provided shall be transcribed in such number of copies as the court may direct. . . ."

The Commonwealth's brief states that there was no standing order at the sitting at which the defendant was tried making all felony cases subject to G. L. c. 278, §§ 33A–33G, inclusive, as amended (see *Commonwealth* v. *McDonald,* 264 Mass. 324, 334), and points out that since these indictments were not for murder or manslaughter, an order of the court was needed to make them so subject.   See *Guerin* v. *Commonwealth,* 337 Mass. 264, 267.   The argument is that it was too late to make the order after the sentence, which is the judgment; and that a trial would not be

---

[1] The defendant makes no contention that, as matter of law, he could not be convicted on all three indictments at the same time.

conducted "subject to" the statutory provision if the order should be made after the trial has been completed. See *Commonwealth* v. *Locke,* 338 Mass. 682, 684, and cases cited.

While it cannot be doubted that the better practice would be to have the order made in advance of trial, we do not believe that the Legislature intended to foreclose the granting of the order after the conclusion of the trial, or, as in this case, even after sentence. This statute, at first applicable only to murder and manslaughter cases, was enacted to eliminate delay. *Commonwealth* v. *Gedzium,* 261 Mass. 299, 305. See St. 1925, c. 279, entitled, "An Act relative to certain appeals in murder and manslaughter cases and to the elimination of delay therein." Its extension to other crimes had the same purpose. See St. 1926, c. 329, entitled, "An Act relative to certain appeals in felony cases and providing for the elimination of delay in all felony and certain other criminal cases." The policy of the law must equally be to eliminate delay in a case like the present provided the judge, in his discretion, makes the order. The present order was, in effect, a part of the appellate process, and was made before the expiration of the time for appeal. It did not affect substantive rights. A stenographer, as required by the statute, had taken the testimony in precisely the same manner as if the order had been made beforehand.

We now consider the defendant's assignment of errors so far as argued.

(a) The first assignment is that there was error in "admitting evidence, oral and pictorial, relating to the identification of the lodgings of Joseph Keyes, who was neither a party nor witness, on the basis of 'res inter alios.'" This relates to exceptions to the admission of two photographs during the testimony of one Tibbo, who had testified that he was the operator of a rooming house at 34 Harvard Street, Charlestown; that about November 1, 1959, Keyes roomed in the only two rooms on the fourth floor; that the defendant used to visit Keyes; that on the morning of March 21, 1960, the defendant came to the house, rang the bell, and asked the witness, who let him in, whether Keyes

was upstairs; that the witness said that he did not know; that the defendant went upstairs; that about a half hour later the witness saw the defendant and Keyes coming down stairs; that the defendant was carrying a cardboard box; and that Keyes "had a bunch of rubbish, I think he put in a bag." The witness then identified each photograph as a fair representation of a portion of Keyes's room. The defendant objected that they were "irrelevant to the defendant," the judge ruled that they might be admitted, and the defendant excepted. There was no error. The admission of photographs is largely in the discretion of the trial judge. *Commonwealth* v. *Noxon,* 319 Mass. 495, 536–537. The two photographs appear to have been of slight importance, were wholly innocuous, and could not have harmed the defendant.

(b) The second error assigned is that the prosecution was allowed to bring Keyes, handcuffed, into the dock where the defendant was, there to be identified by Tibbo. The background of this assignment is that Tibbo, when on the stand the first day, on direct examination by the district attorney identified Keyes, and no exception was taken. When Tibbo resumed the stand the next day, the following occurred. "Q. [THE DISTRICT ATTORNEY] Now, Mr. Tibbo, you recall yesterday I asked you if you saw Mr. Keyes in the court room? A. Yes, sir. Q. And you pointed. Now, for the record, I want to establish—do you see him now in the court room? A. Yes, sir, coming in. COUNSEL FOR THE DEFENDANT: I pray Your Honor's judgment. What has the presence of this man in court, Mr. Keyes, handcuffed, got to do with this case? THE JUDGE: I think he pointed him out. THE DISTRICT ATTORNEY: There were a number of people in the court room and I wanted the record to show whom he was pointing out, for identification purposes. COUNSEL FOR THE DEFENDANT: I object to the identification of this man, handcuffed, in the court room. THE JUDGE: Objection overruled. COUNSEL FOR THE DEFENDANT: Please note my exception. THE DISTRICT ATTORNEY: Where is Mr. Keyes? A. I, right— Q. Which one? A. That one

right there. THE DISTRICT ATTORNEY: Will you stand up? May it appear for the record the man he has pointed out, Mr. Keyes, is the gentleman that has just been brought into the dock and sitting there with the defendant."

The assignment asserts that "such presence of Keyes was an attempt by the prosecution to prove guilt of the defendant by association." The record, however, does not sustain this assertion. Identification of a person in the court room, when material, may be properly made. *Commonwealth* v. *Reynolds,* 338 Mass. 130, 137–138. That Tibbo could identify Keyes was a material fact. It does not appear that identification of Keyes was sought in such a way as to take an unfair advantage of the defendant. It was the duty of the trial judge to use his discretionary power to prevent overreaching conduct. We cannot say that he failed in this duty.

We point out that no harm could have resulted to the defendant from this episode. On cross-examination of Detective Donovan the defendant's counsel later elicited testimony that Donovan had placed Keyes and Silvia under arrest on suspicion of committing a felony. Still later on cross-examination of Doyle, a Worcester police officer, the defendant's counsel asked the witness if he had been in the court room when Keyes and Silvia were charged with certain offences, and Keyes pleaded guilty to the offence of breaking, entering, and larceny at the Hillcrest Dairy, and received an affirmative answer.

(c) Assignments of error 3, 4, 6, 8, 10, and 11 are described in the defendant's brief as "based upon the allowance by the court of testimony by Boston police officers concerning observations made in the lodgings of Joseph Keyes at 34 Harvard Street, Charlestown, and the admission into evidence of articles, particularly bags of money and burglarious tools and instruments." It is argued that the evidence was irrelevant, and "was obtained as the result of illegal search and seizure at the premises of Joseph Keyes." These points are not argued with enough definiteness or at sufficient length to require detailed discussion. There is

nothing whatsoever in the record to support the assertion that there was an illegal search and seizure. The evidence appears to have been relevant. For a variety of reasons no question is presented as to much of it. Exceptions must be taken to evidence when it is offered. Exceptions based upon motions to strike an answer which is responsive to a question to which no objection is made are of no avail. *Commonwealth* v. *Theberge*, 330 Mass. 520, 527. *Commonwealth* v. *Geagan*, 339 Mass. 487, 513. Some of the assignments are too vague to comply with G. L. (Ter. Ed.) c. 278, § 33D, which states in part, "The mere statement that the evidence was inadmissible or immaterial or irrelevant, without other grounds, shall not be a sufficient assignment of error."

(d) Assignment 7 arises out of the testimony of Officer Ingemi of the Boston police department while under direct examination by the district attorney. There had been testimony as to what occurred after the defendant and Keyes had left the rooming house after the events outlined in (a), *supra*. They walked to an automobile and the defendant dropped a cardboard box on the sidewalk. They were arrested and taken to the police station, where the box was found to contain two small white canvas bags and forty-two brown canvas zipper lock small bags marked Hillcrest Dairy Incorporated; a large and a small canvas bag marked Worcester County Trust Company; a paper bag containing assorted checks and pay envelopes for Hillcrest; and $105.25 in change in rolls of dimes, nickels, and pennies. Officer Donovan testified that at the police station he asked the defendant what he was doing with the box, and the defendant replied, "I just picked it up around the corner."

The following occurred during the testimony of Officer Ingemi: "Q. [BY THE DISTRICT ATTORNEY] Did you hear some conversation between any of the officers and Mr. Silvia? A. Yes, sir. Q. What conversation did you hear? A. Sergeant Coleman asked Silvia what was in the box and Keyes had said, 'Shut up, don't say anything.' COUNSEL FOR THE DEFENDANT: I pray Your Honor's judgment.

THE WITNESS: 'Don't say a word.' COUNSEL FOR THE DEFENDANT: I pray Your Honor's judgment. That conversation about Keyes. THE JUDGE: Objection overruled. COUNSEL FOR THE DEFENDANT: Please note my exception. THE JUDGE: It may be done. Q. [BY THE DISTRICT ATTORNEY] What did Silvia then do? A. He kept quiet."

The alleged error is that the question was as to a conversation between the officer and the defendant, whereas the answer was a conversation between the officer and Keyes. No objection was made nor exception taken to the last question to which the answer was that the defendant remained silent. As was made clear in the charge, there was no duty on the defendant to speak after he was placed under arrest, and no unfavorable inference could be drawn from his silence. There was no violation of any principle enunciated in *Commonwealth* v. *Gangi*, 243 Mass. 341, 345, relied upon by the defendant.

The question relating to the conversation was properly asked to show the relationship of the defendant to Keyes and to the cardboard box. The answer, if not strictly responsive, was nevertheless competent evidence. *Commonwealth* v. *McGarty*, 323 Mass. 435, 439–440. *Commonwealth* v. *Taylor*, 327 Mass. 641, 649.

(e) The ninth assignment arises out of the direct testimony of Sergeant Coleman which was similar to that of Officer Ingemi. He testified that after their arrest the defendant and Keyes were seated in the police station while Detective Donovan itemized the articles in the box. The following then occurred. "Q. [BY THE DISTRICT ATTORNEY] When that was completed did you do anything further? A. Coming back to Mr. Silvia, we asked him his name and which he gave it to us, Louis A. Silvia. His address, he gave us his address. Coming down to the box — Detective Donovan: 'Where did you get the box?' He said, 'I found it.' Another question was asked of him which I don't know who said it. 'Where did you find it?' At that particular time Mr. Keyes said, 'Shut your mouth.' COUNSEL FOR THE DEFENDANT: I pray Your Honor's judgment. He doesn't know who asked that question. I ask that question and an-

swer be stricken. THE JUDGE: Objection overruled. COUN-
SEL FOR THE DEFENDANT: My exception.''

The question was admissible. The answer was largely
responsive, and was competent evidence. The only excep-
tion is to the denial of a motion to strike both question and
answer. This could not be properly allowed. See *Com-
monwealth* v. *Rudnick*, 318 Mass. 45, 62. No new point is
presented.

(f) The fourteenth assignment of error borders upon the
frivolous. The defendant's counsel asked Officer Doyle of
the Worcester police on recross-examination: ''Now, based
upon your latest recollection do you recall that Captain
Donovan stated in your presence and in Silvia's presence
that Dr. Hight found nothing wrong with Mr. Silvia?''
This was excluded. The defendant's counsel excepted. He
then said, ''I will try to rephrase it. On Tuesday, when
you and Captain Donovan and Captain Donnelly were there
with Silvia, do you recall that Captain Donovan stated Dr.
Hight found Silvia to be O. K.?'' The witness responded,
''I didn't say that.'' The defendant's counsel then asked,
''It is your recollection he didn't say that?'' The witness
replied, ''No, he didn't.'' The original question was inad-
missible as hearsay, but it was allowed in rephrased form
and answered.

(g) Assignment 15, relating to the exclusion of a ques-
tion asked in direct examination, is not in compliance with
that part of G. L. (Ter. Ed.) c. 278, § 33D, which provides,
''The specific grounds upon which any claim of error is
based shall be set forth in a concise form.'' It is argued
only by cryptic suggestion in a single sentence, and does not
merit discussion.

(h) Assignment 17 to the denial of the defendant's mo-
tion for a directed verdict cannot be considered. No excep-
tion was taken. *Commonwealth* v. *Gray*, 314 Mass. 96, 102.
*Commonwealth* v. *Theberge*, 330 Mass. 520, 527. *Common-
wealth* v. *Chester*, 337 Mass. 702, 703. Even so, an exami-
nation of the record amply demonstrates that the motion
was properly denied.

*Judgment affirmed.*