COMMONWEALTH *vs.* PATRICIA MORAN
(and seven companion cases[1]).

Suffolk.   May 1, 1967. — July 19, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Search and Seizure.   Constitutional Law,* Search and seizure, Due process of law.

An affidavit by a police officer and an affidavit by an agent of the Federal Bureau of Investigation presented to a court by the officer in support of an application for a search warrant for a certain room in a hotel, considered in their entirety with the reasonable inferences therefrom and in the light of common knowledge, complied with the requirements of G. L. c. 276, § 2B, and as a matter of law set forth sufficient facts for the court to find probable cause for the issuance of the warrant where, based on information from a reliable informant or from personal knowledge, the affidavits stated that the defendant "has a bookmaking office and also is engaged in the transmission of horse racing information and results to bookmakers," that he is "operating this illegal activity through [a stated] telephone number" listed at the hotel, that he is "associated in this illegal activity at this location with an unknown woman," that on fifteen specified dates, excluding Sundays, during the horse racing season he entered the room and remained there from about noon to about "6:40 P.M.," and that he had been sentenced to a Federal penal institution for contempt of court in refusing to answer questions regarding "the interstate transmission of illegal racing information." [170–171]

A search warrant for gaming paraphernalia was not defective because based in part upon a supporting affidavit under G. L. c. 276, § 2B, by an agent of the Federal Bureau of Investigation who relied on information received from an anonymous informant but who did not state in his affidavit the "date or dates" when it was received, where the alleged

---

[1] Patricia Moran is also the defendant in two of the companion cases. Arthur Marcus is the defendant in five of the companion cases.

offences of the defendant were of a continuing nature and the affidavits in support of the warrant showed that he had been under police surveillance for a considerable period of time.   [171]

Dismissal of gaming complaints in a Municipal Court over the objection of the defendants after the return in the Superior Court of indictments against them covering the same matter did not violate any constitutional rights of the defendants although they had answered "ready for trial" in the Municipal Court.   [171–172]

EIGHT INDICTMENTS found and returned in the Superior Court, two on September 9, 1966, and six on September 21, 1966.

Questions of law were reported by *Glynn,* J., a Municipal Court judge sitting under statutory authority.

*Harold Katz* (*William P. Homans, Jr.,* with him) for the defendants.

*James E. Foley,* Assistant District Attorney, for the Commonwealth.

SPIEGEL, J.   The questions for decision were reported under G. L. c. 278, § 30A.   They arose out of eight indictments charging various offences under the gaming laws.

The statement of facts included in the judge's report may be summarized as follows:   On July 7, 1966, Ralph V. Ryan, a Boston police officer, made an application to the Municipal Court of the Roxbury District for a warrant to search premises at room 611 of the Hotel Gladstone, 677 Dudley Street, Roxbury.   The application was supported by the affidavits of Ryan and of Leonard Frisoli, an F. B. I. agent.   A search warrant was issued, under the authority of which the police entered the premises described and seized gaming paraphernalia.   The defendants were also arrested at that time.   After arraignment in the Municipal Court on July 8, 1966, on complaints, those cases were continued to September 12, 1966.   On September 9, evidence was presented to the Suffolk grand jury, and an indictment was returned against each defendant alleging violation of the gaming laws.   On September 12 the defendants appeared in the Municipal Court and answered "ready for trial."   The Commonwealth, however, asked

for a dismissal of the complaints in the Municipal Court on the grounds that two indictments covering the same matter had been returned against the defendants and that other indictments were then pending before the grand jury. Over the defendants' objections, the complaints were dismissed.

In the Superior Court, pre-trial motions were made by each defendant to suppress the evidence and to dismiss the indictments. All of these motions were denied. The judge was of opinion that the motions presented questions of law of such importance as to require the decision of this court before any further proceedings in the trial court. The questions reported are: "1. As a matter of law, did the supporting affidavits attached to the application for a search warrant set forth sufficient facts for a Court to find probable cause for the issuance of the search warrant? 2. Is the search warrant otherwise defective for lack of sufficient dates in the supporting affidavits? 3. As to the motion to dismiss, was there a violation of due process of law guaranteed to the defendants by Amendments 4 and 14 of the Constitution of the United States and the 12th article of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts by the dismissal of the complaints in the . . . [Municipal] Court over the objection of and without the consent of the defendants?"

1. The affidavits from a Boston police officer and from a special agent of the Federal Bureau of Investigation disclose the following facts based on information received from a reliable informant[2] and from personal knowledge.[3]

---

[2] The affidavit of the F. B. I. special agent states: "I have received information from an informant, who since 1961 to the present time has furnished me reliable information relating to bookmaking activities and the dissemination of horse and dog racing information and results. This informant, who is closely associated with bookmakers, has furnished information which was always accurate and very beneficial to the successful prosecutions relating to these matters in federal and state courts."

[3] The special agent stated in the affidavit that the defendant Marcus "is personally known to me and has been under investigation by me at various periods of time since 1961."

(1) The defendant Marcus residing in Newton, Massachusetts, has a bookmaking office and also is engaged in the transmission of horse racing information and results to bookmakers.

(2) He "is operating this illegal activity through telephone number Hi2 5692 which is listed at *677 Dudley St.* Roxbury, Massachusetts" (emphasis supplied).

(3) He "is associated in this illegal activity *at this location* with an unknown woman" (emphasis supplied).

(4) "The telephone number . . . is listed in the telephone directory to one Ruth Dunner at *677 Dudley St.* Roxbury" (emphasis supplied).

(5) On June 21, 22, 23, 24, 25, 27, 28, 29, and 30; July 1, 2, 4, 5, 6, and 7, Marcus entered room 611 at 677 Dudley Street. He remained in the room on these dates from about 12 noon to about 6:40 P.M.

(6) "In 1963, . . . Marcus was sentenced to serve 6 months at the Federal Correctional Institution at Danbury, Conn. for contempt of court, for refusing to answer questions before a Federal Grand Jury which was investigating the interstate transmission of illegal racing information" after he had been granted immunity.

The principles governing the sufficiency of information for the issuance of a search warrant have been fully set forth in recent decisions of the Supreme Court of the United States. *Aguilar* v. *Texas,* 378 U. S. 108. *United States* v. *Ventresca,* 380 U. S. 102. *McCray* v. *Illinois,* 386 U. S. 300. See *Rosencranz* v. *United States,* 356 F. 2d 310, 313–314 (1st Cir.); *Commonwealth* v. *Rossetti,* 349 Mass. 626, 630–632; *Commonwealth* v. *Maneatis,* 350 Mass. 780. The principles which are applicable here are that (1) inferences leading to the issuance of a warrant should be drawn by a neutral magistrate rather than by a police officer, and (2) the magistrate must be presented by the applicant for the warrant with a recitation of underlying circumstances which support such inferences.

It is most difficult to determine with exactness when a statement is a conclusion or a subsidiary fact. If we

should isolate each individual assertion in the affidavits it may well be argued that a number of them are merely conclusions. However, we need not isolate each individual statement and determine that this or that statement is a conclusion. We deal with the affidavits in their entirety and draw inferences therefrom.

We believe that the information contained in the affidavits, taken as a whole, together with the inferences which reasonably could be drawn from such information provided ample justification for a judicial mind to conclude the existence of probable cause. See *McCray* v. *Illinois*, *supra*.

It would indeed be naive for the court to insist upon an affidavit which would state in minute detail facts with which almost everyone is familiar. It is common knowledge that race track bookies do operate. It is also common knowledge that the dates set out in the affidavit exclude Sundays and fall within the horse racing season in this area and the times between Marcus' arrival at and departure from the hotel include the hours during which races are held. When a man is known by the police to be a bookie, was sentenced to serve six months for contempt of court for refusing to answer questions regarding illegal racing activity, enters the same hotel room day in and day out (excluding Sundays) from about 12 noon to 6 or 7 P.M., and has an associate who occupies a room in the same hotel, there is a sound basis for a firm belief that he does not perform that daily routine for the purpose of playing solitaire. While any doubt as to what he was doing in that room each day would have been removed if the affidavit had stated that he had accepted wagers while there, we do not think that the decisions of the United States Supreme Court require that precise a statement in the affidavit. We do not believe that these decisions were intended to provide an escape hatch for those entrepreneurs engaged in illegal horse racing activities.

We are of opinion that, considering the two affidavits in their entirety and the reasonable inferences to be drawn

therefrom and based on common knowledge, the affidavits were sufficient for the issuance of the search warrant.

The affidavits also comply with the provisions of G. L. c. 276, § 2B, inserted by St. 1964, c. 557, § 3. Compare, e.g., *Commonwealth* v. *Maneatis,* 350 Mass. 780. The facts were adequately stated in the affidavit to show the basis upon which the informant was believed to be reliable. Cf. *Commonwealth* v. *Monosson,* 351 Mass. 327, and the bases for the personal belief of the affiant officer. Cf. *Commonwealth* v. *Penta,* 352 Mass. 271.

It is the opinion of a majority of the court that the answer to the first question reported is: Yes.

2. In regard to the second question the defendants maintain that "[s]ince the application did not contain the date or dates of the observations made by the informant to the affiant Frisoli, the application was inadequate." The defendants in challenging this omission cite the case of *Rosencranz* v. *United States,* 356 F. 2d 310, 312 (1st Cir.). We believe that the *Rosencranz* case is readily distinguishable from the case before us. The affidavits did not contain "ancient information" based solely on the report of an anonymous informer. The offences alleged were of a continuing nature and the affidavits showed that the defendant Marcus was under police surveillance for a considerable period of time. Our answer to the second question reported is: No.

3. The third question reported is whether the dismissal of the complaints in the Municipal Court violated rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and art. 12 of the Massachusetts Declaration of Rights. The Fourth Amendment, as applied to the States through the Fourteenth Amendment, pertains to unreasonable searches and seizures. Article 12 pertains to certain basic rights of an accused, including our equivalent of the Fourteenth Amendment's due process clause. The defendants were accorded a full opportunity in the Superior Court to challenge the validity of the search warrant. No constitutional right of

the defendants was violated in the dismissal of the complaints.   The answer to the third question is: No.

## Conclusion.

The cases are remanded for further proceedings consistent with this opinion.

*So ordered.*