COMMONWEALTH vs. RICHARD F. FLEURANT.

Worcester. April 8, 1974. — May 15, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Search and Seizure. Probable Cause. Evidence,* Conversation. *Firearms. Words,* "Firearms," "Machine Gun."

In a prosecution for unlawful possession of machine guns, it was held that the affidavit supporting an application by a police officer for a warrant to search the defendant's place of business satisfied constitutional and statutory requirements where in substance it recited that a named informant had told the officer that the defendant had all kinds of firearms in his premises and had displayed to the informant a variety thereof, including the machine guns, and that the defendant had had prior arrests and convictions, and attached to the affidavit were statements of the informant and another person admitting participation with the defendant in criminal activities not directly related to weapons offenses; the sufficiency of the affidavit was not impaired by the fact that at trial the informant testified that he had not seen the machine guns for thirteen months before making his statement to the officer. [251-255]

Where, at a criminal trial, the judge had excluded an entire conversation at the defendant's request, there was no error subsequently in excluding a question by the defendant's counsel to a witness designed to elicit a part of the conversation. [255-256]

The fact that one had a firearm identification card issued to him under G. L. c. 140, § 129B, did not preclude conviction of him of unlawful possession of a machine gun under c. 269, § 10, where he did not have a license to possess and carry the machine gun under c. 140, § 131. [256-258]

INDICTMENTS found and returned in the Superior Court on September 15, 1972.

Pre-trial motions to suppress evidence were heard by *Moriarty, J.,* and the cases were tried before him.

*Conrad W. Fisher* for the defendant.

*James P. Donohue,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.  At a jury trial held subject to the provisions of G. L. c. 278, §§ 33A-33G, the defendant was found guilty on two indictments each charging unlawful possession of a machine gun.  G. L. c. 269, § 10, as amended through St. 1969, c. 799, §§ 14-16.  He has assigned as error: (1) the denial of his motion to suppress evidence; (2) certain evidentiary rulings made at trial; and (3) the denial of his motions for directed verdicts.[1]

1. (Assignment of Error No. 1.)  The machine guns in question, together with other weapons and ammunition, were seized on May 16, 1972, when officers of the Worcester police department executed a search warrant at the defendant's place of business.  The search warrant had been obtained earlier that day by Lieutenant Thomas Leahy.  The defendant argues that his motion to suppress evidence seized pursuant to the warrant should have been allowed because the affidavit submitted in support of the application for the warrant failed to satisfy Federal constitutional or Massachusetts statutory requirements.

The affidavit recited, among other things, that Lieutenant Leahy received information from one Michael Bonin "this morning that Fleurant has all types of rifles and handguns and that they are stored in various rooms in his shop and that some of them are kept in the cellar there."  The affidavit also recited that "Bonin further states that Fleurant has displayed to him and let him handle a variety of guns and described one as a British Sten fully automatic machine gun; . . . another as a .45 caliber [C]olt machine gun . . . [and] another as a

---

[1] Of the thirty-five assignments of error filed by the defendant, only thirteen will be considered.  Nine assignments of error are deemed waived as they have not been briefed.  *Commonwealth* v. *Martin,* 358 Mass. 282, 283 (1970).  Eighteen assignments of error (including five of those deemed waived) do not conform to the requirements of G. L. c. 278, § 33D, in that no specific grounds upon which they are based are set forth.  See *Commonwealth* v. *Silvia,* 343 Mass. 130, 138 (1961).

German machine pistol 40." The affidavit stated the defendant's prior arrests and convictions. The affidavit concluded: "Based upon information included in this affidavit and upon Fleurant's past record of convictions and observation at Bridgewater State Hospital I have reason to believe and do believe that if Richard Fleurant is in possession of a firearms Identification Card that he is in possession of it by reason of false statements and information provided to the licensing authorities and the same would apply in reference to any firearms license or permit to purchase." Attached to the affidavit were statements of Bonin and one Lemerise, in which both admitted participation with Fleurant in certain criminal activities not directly related to weapons offenses.

The defendant attacks the sufficiency of the affidavit on two grounds: that the familiar "two-pronged test" of *Aguilar* v. *Texas*, 378 U. S. 108 (1964), was not met, and that the information supplied by Bonin was stale. We disagree with the defendant on both grounds.

The two-pronged test enunciated in the *Aguilar* case and refined by the Supreme Court in *Spinelli* v. *United States*, 393 U. S. 410 (1969), and in *United States* v. *Harris*, 403 U. S. 573 (1971), requires that an affidavit accompanying an application for a search warrant inform the magistrate issuing the warrant (in this case an assistant clerk of the Central District Court of Worcester) of some of the underlying circumstances upon which the affiant concluded that the informant was reliable and of some of the underlying circumstances upon which the informant concluded that the defendant was engaged in criminal activity. *Aguilar* v. *Texas, supra,* at 112-116. *Commonwealth* v. *Stewart,* 358 Mass. 747, 750 (1971). *Commonwealth* v. *Stevens,* 362 Mass. 24, 27 (1972).

In applying that test to a particular affidavit, the affidavit is not to be subjected to hypertechnical scrutiny but is to be interpreted in a commonsense fashion. *Commonwealth* v. *Stewart, supra,* at 750. The affidavit is to be examined as a whole. *Commonwealth* v.

*Moran,* 353 Mass. 166, 170 (1967). *Commonwealth* v. *Victor,* 1 Mass. App. Ct. 600, 601 (1973). The test is applied to determine if the magistrate had probable cause to issue the warrant, not to determine whether there was evidence of guilt beyond a reasonable doubt. *United States* v. *Harris,* 403 U. S. at 584. *Commonwealth* v. *Haefeli,* 361 Mass. 271, 284-285 (1972). The inquiry is ordinarily limited to those facts which the magistrate had before him as contained in the affidavit. *Commonwealth* v. *Monosson,* 351 Mass. 327, 328-329 (1966). *United States* v. *Sultan,* 463 F. 2d 1066, 1070 (2d Cir. 1972). *United States* v. *Harris,* 482 F. 2d 1115, 1118 (3d Cir. 1973).

Examining the affidavit with these considerations in mind, we conclude that the affidavit was amply sufficient to satisfy each prong of the *Aguilar* test. It was not necessary for the affiant to allege that the informant was believed to be reliable. The facts presented in the affidavit itself may be sufficient indicia of the informant's credibility. *United States* v. *Harris, supra,* at 579-580. *United States* v. *Unger,* 469 F. 2d 1283, 1286-1287 (7th Cir. 1972). The specificity of the information supplied, the affiant's occasion to question the informant, and the fact that the informant was named and was not a paid informer are all relevant circumstances in determining the informant's credibility. *United States* v. *Viggiano,* 433 F. 2d 716, 718 (2d Cir. 1970). *United States* v. *Bigos,* 459 F. 2d 639, 641-642 (1st Cir. 1972). *United States* v. *Unger, supra. United States* v. *Wilson,* 479 F. 2d 936, 940 (7th Cir. 1973). The fact that the informant admitted his own involvement in criminal activity is also of some relevance, although it should be noted here that such criminal activity was not directly related to the offenses comprehended within the scope of the affidavit. An informant's admitted criminal involvement is not conclusive on the issue of reliability, but it may be taken into consideration if other factors indicative of reliability are also present. See *Commonwealth* v. *Stewart,* 358 Mass.

747, 752 (1971). See also *United States* v. *Viggiano, supra*, at n. 3.

The second prong of the *Aguilar* test is also satisfied. The affidavit discloses that the informant personally observed the criminal activity at issue. Evidence that the informant was an eye witness is a constitutionally sufficient demonstration of the source of his information. *United States* v. *Bigos, supra*, at 641. *Commonwealth* v. *Stevens*, 362 Mass. 24, 28 (1972).

We find no merit in the defendant's claim that the information supplied by the informant was stale. The defendant bases that assertion upon Bonin's testimony at trial that he had not seen the machine guns for thirteen months prior to making the statement to the police. The principal weakness in the defendant's argument is his contention that the information concerning the machine guns "was the *only* information upon which probable cause could be based to issue the warrant . . ." (emphasis supplied). An examination of the affidavit discloses that Bonin supplied considerable additional information indicating his continuing observation of other weapons upon which probable cause to issue a warrant was properly based. It also appears from the affidavit that the defendant was suspected of possessing firearms in violation of G. L. c. 140, §§ 129, 129B, and 129C, as well as possessing machine guns in violation of G. L. c. 269, § 10. The fact that the defendant was subsequently indicted only for violating G. L. c. 269, § 10, bears no relation to the initial determination of probable cause to issue a search warrant for the various items described in the affidavit.

It should also be pointed out that the magistrate did not have before him the evidence that the machine guns had been seen some months earlier; that evidence was elicited at trial. Our review of the magistrate's action must be confined to the circumstances presented by the affidavit. The language of the affidavit indicated that at least some of the events contained therein had taken

place recently. See *United States* v. *Unger,* 469 F. 2d 1283, 1287 (7th Cir. 1972). An affidavit need not, in every case, disclose the precise times at which the informant gleaned his information. The nature of the criminal activity at issue determines the necessity for specifying times. Unlike drugs or liquors, a collection of weapons is not likely to be consumed or destroyed. *Bastida* v. *Henderson,* 487 F. 2d 860, 864 (5th Cir. 1973). We think the affidavit recited "facts indicating activity of a protracted and continuous nature [and therefore] . . . the passage of time [became] less significant." *United States* v. *Johnson,* 461 F. 2d 285, 287 (10th Cir. 1972). *Commonwealth* v. *Moran,* 353 Mass. 166, 171 (1967). *Commonwealth* v. *Misci,* 358 Mass. 804 (1970).

We hold that the search warrant was properly issued in conformity with G. L. c. 276, §§ 1-8, that the affidavit complied with Federal constitutional requirements and, therefore, that the motion to suppress was properly denied. We perceive no violation of G. L. c. 123, § 36 (inserted by St. 1970, c. 888, § 4), as alleged by the defendant.

2. In view of our decision that the motion to suppress was properly denied, we hold that the evidentiary rulings complained of in seven assignments of error (Nos. 2-7 and 10) were proper and do not require further discussion. The question complained of in the ninth assignment of error was properly allowed. There is no merit in the defendant's claim that the question, which pertained to the date of an earlier visit by a police officer to the defendant's place of business, tended or was intended to suggest the defendant's involvement in other crimes. Furthermore, testimony of the date of the visit had been elicited moments earlier without objection.

(Assignment of Error No. 8). There was no error in the judge's exclusion of a question put to a police officer by defense counsel which was intended to elicit part of a conversation between the defendant and the police. The judge, at the defendant's request, had previously ruled

the entire conversation inadmissible on the basis of *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Admitting part of the conversation would have entitled the Commonwealth to elicit relevant portions of the entire conversation. *Commonwealth* v. *Taylor,* 327 Mass. 641, 648-649 (1951), and cases cited. McCormick, Evidence (2d ed.) § 56. Wharton's Criminal Evidence (13th ed. Torcia) § 162. It is clear from the record that the defendant was unwilling to have the entire conversation admitted in evidence.

3. (Assignments of Error Nos. 11, 16, 31). The defendant argues that his motions for directed verdicts should have been allowed. He stipulated that he did not have a license to possess and carry a machine gun (see G. L. c. 140, § 131, as amended through St. 1969, c. 799, § 11) but maintains that he nevertheless did not violate G. L. c. 269, § 10 (as amended through St. 1969, c. 799, §§ 14-16),[2] because the firearm identification card issued to him entitled him to possess (so long as he did not carry) a machine gun. In other words, the defendant argues that his ownership of a firearm identification card brings him within the protection of the phrase "except as provided by law," as used in G. L. c. 269, § 10.

We disagree. First, we note that the phrase "except as provided by law" was inserted in § 10 by St. 1935, c. 290, more than thirty years before the enactment of the firearm identification card statutes (G. L. c. 140, §§ 129B-129D, inserted by St. 1968, c. 737, § 7); thus, the phrase could not have been intended to apply to the situation presented here. Second, we think that the precision with which the terms "firearm" and "machine gun," both of which are defined in G. L. c. 140, § 121

---

[2] The relevant portion of that statute provides: "Whoever, except as provided by law, possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty, without permission under section one hundred and thirty-one of said chapter, shall be punished by imprisonment in the state prison for life or for any term of years."

(as amended through St. 1971, c. 456, § 1),[3] are used throughout c. 140 demonstrates a clear intention that machine guns be treated differently from other weapons. Assuming without deciding that certain machine guns — i.e., those with barrels shorter than sixteen inches — may be classified as "firearms," as defined under § 121, it is nonetheless clear that additional restrictions are placed upon the possession of machine guns of any description, regardless of their barrel length.[4] The additional restriction material to this case is that, in addition to a valid firearm identification card, the defendant was also required to secure a license to possess and carry a machine gun issued pursuant to § 131 in order to avoid prosecution under G. L. c. 269, § 10. The motions for directed verdicts were properly denied.

---

[3] Section 121, as so amended, reads in part: "In . . . [§§ 122 to 131F], inclusive, 'firearm' shall mean a pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel is less than sixteen inches or eighteen inches in the case of a shotgun, and the term 'length of barrel' shall mean that portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized, and shall include the chamber. A 'machine gun' is a weapon of any description, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous pull of the trigger, and includes a submachine gun."

[4] See, e.g., G. L. c. 140, §§ 123 and 131E, pertaining to the sale and purchase of firearms. Section 131E (as amended through St. 1969, c. 799, § 12) authorizes the purchase of "firearms, rifles and shotguns from any . . . [licensed] dealer" by any resident who presents a "license to carry firearms issued . . . under the provisions of . . . [§ 131], or a permit to purchase issued . . . under . . . [§ 131A] together with a firearm identification card issued . . . under . . . [§ 129B]. . . ." Section 123 (as amended through St. 1969, c. 799, § 3), however, specifically restricts the sale, rental, or leasing of a machine gun to persons who have "a license to possess the same issued under . . . [§ 131]." Thus, it would appear that one who has a license to carry firearms issued pursuant to § 131, but who does not have a license to possess and carry a machine gun, also issued pursuant to § 131, would be prohibited by § 123 from lawfully purchasing a machine gun.

In view of our decision on this point, the error complained of in the thirty-first assignment, if it was error, was harmless.

*Judgments affirmed.*