COMMONWEALTH *vs.* FLETCHER H. HIGGINBOTHAM. January 23, 1981. The defendant and one John Usher were indicted, jointly tried and convicted by a jury in the Superior Court of armed robbery while masked, and of two counts of assault by means of a dangerous weapon. All of the charges arose out of a robbery of the Bernardston branch of the Pioneer National Bank. The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G. He asserts that the trial judge erred (1) in denying his three pretrial motions to suppress evidence, (2) in ruling on certain evidentiary matters, and (3) in refusing to conduct an evidentiary hearing on his motion to dismiss the grand and petit jury pools. We affirm the judgments of conviction.

1. In attacking the validity of the application for the first search warrant (January 14) the defendant argues that the supporting affidavit

failed to meet the familiar "two-pronged test" of *Aguilar* v. *Texas*, 378 U.S. 108 (1964). See also *Spinelli* v. *United States*, 393 U.S. 410 (1969); *Commonwealth* v. *Stewart*, 358 Mass. 747, 750 (1971). Courts, however, have relaxed the *Aguilar* standard where, as here, the informant is an average citizen and a witness to or a victim of a crime, see *Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 628-629 (1978), the rationale being that "the concomitant danger of self-interest does not inure to a victim or witness to a crime as it would to a government informant." *United States* v. *Unger*, 469 F.2d 1283, 1287 n.4 (7th Cir. 1972), cert. denied, 411 U.S. 920 (1973).

It is not disputed that Dennis King was a citizen informant. Bearing in mind the aforementioned guidelines, we accordingly conclude that both prongs of the *Aguilar* standard were satisfied. *Commonwealth* v. *Fleurant*, 2 Mass. App. Ct. 250, 252-254 (1974). The affidavit and facts stated therein provided sufficient indicia of the informant's credibility. See *United States* v. *Harris*, 403 U.S. 573, 579-580 (1971). The reliability of the information which King provided was shown by his ability to give a detailed description of the vehicle known to have been used in the robbery and of a unique homemade license plate it bore.

The affidavit was further buttressed by a recitation of Officer Mahoney's independent observations made in the course of his investigation and by his statement that later in the afternoon King identified the abandoned vehicle as the same car that he had seen depart from and return to the defendant's premises.

We therefore agree with the lower court's finding that the magistrate had sufficient information before him to find probable cause to issue the January 14 warrant. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 477 (1980).

2. The defendant's assertion that the affidavits in support of the applications for the second and third warrants lacked probable cause for failure to corroborate Golon's statements with respect to the money hidden in the furnace is totally unpersuasive. To the defendant's claims that Golon's statements were unreliable, uncorroborated and "conclusive," we need say only that statements received from a participant in the criminal enterprise "carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search." *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975), quoting from *United States* v. *Harris*, 403 U.S. 573, 583 (1971). *Commonwealth* v. *Lepore*, 349 Mass. 121, 123 (1965) ("Incriminating admissions by one who asserts participation tend to show the reliability of his statements"). See *United States* v. *Miley*, 513 F.2d 1191, 1204 (2d Cir.), cert. denied sub nom. *Goldstein* v. *United States*, 423 U.S. 842 (1975). See also *Commonwealth* v. *Stewart*, 358 Mass. at 752. Moreover, the specificity of the information supplied and the precise directions to the location of the trunk keys (i.e., "on a stand just inside the front door . . . on the west side of the building") were also

relevant factors lending support to Golon's credibility. See *Commonwealth* v. *Fleurant*, 2 Mass. App. Ct. at 253. Compare *Commonwealth* v. *Brown*, 354 Mass. 337, 346 (1968).

3. The defendant also argues that the information relied on in support of the third warrant (January 26) was stale because of the length of time between the observations by Golon and the issuance of the warrant. Although the lapse of time involved is important, it is not necessarily the controlling factor. *Commonwealth* v. *Fleurant, supra* at 254-255. See *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 181 n.6 (1980). Courts must also look to the consumability and incriminating nature of the stolen property. See *Commonwealth* v. *Fleurant, supra* at 255. Contrast *United States* v. *Steeves*, 525 F.2d 33, 38 (8th Cir. 1975).

The amount of time which elapsed between the time of the arrest of Golon and the search was twelve days. The fact that the contraband was stolen cash did not in and of itself make Golon's information stale. In considering "staleness" in determining the existence of probable cause the "affidavit need not demonstrate that the items sought are in fact on the defendant's premises at the time, but need only provide the issuing magistrate with a substantial basis for concluding that any of such articles is probably there." *Commonwealth* v. *Blye*, 5 Mass. App. Ct. 817 (1977). Golon's admission that in complicity with Paula Cheevers he had hidden the money in the furnace at the time the police arrived at the house leads one reasonably to conclude that he had personal knowledge as to the whereabouts of the missing money.

In sum, we think that when "the type of crime, the nature of the [described] items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [such] property," *United States* v. *Fortes*, 619 F.2d 108, 114 (1st Cir. 1980), quoting from *United States* v. *Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970), were coupled with the statements of a participant in the criminal enterprise, the magistrate had a sufficient basis upon which to find probable cause for the issuance of the January 26 warrant.

4. Ordinarily it is impermissible to show that a criminal defendant committed an unrelated crime on a previous occasion for purposes of raising by inference proof of guilt of the crime for which the defendant is presently being tried. See *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947); *Commonwealth* v. *Walker*, 370 Mass. 548, 568-569, cert. denied, 429 U.S. 943 (1976). However, evidence of prior criminal conduct on other occasions is admissible provided it is reasonably near in time and so connected with the crime charged as to show "unity of plot and design and that it was part of a common plan or scheme." *Commonwealth* v. *Stone, supra* at 474. See *Commonwealth* v. *Baker*, 368 Mass. 58, 85-86 (1975).

In the instant case Golon as well as a local police officer testified about a prior aborted attempt to rob the Mammoth Mart store in Greenfield. Golon

testified that in November, 1975, four individuals, including the defendant, met to plot the robbery of the night clerk of Mammoth Mart. At approximately 10:45 P.M. on the night before the robbery was to occur the four men drove to and parked in the parking lot behind the store. Golon told how the plan was thwarted when they were suddenly approached by an inquisitive police officer who then asked them for identification. The parties were sufficiently discouraged to abandon the entire scheme. It was during the week following the Mammoth Mart incident that the parties met and planned to rob the Bernardston branch bank. We thus conclude that it was not error to allow in evidence plans demonstrating "the state of mind of the group, showing a common plan to carry out a robbery." *Commonwealth* v. *Tatro*, 4 Mass. App. Ct. 295, 297 (1976). See *Commonwealth* v. *Baker, supra* at 86. Moreover, we do not think that the introduction of such testimony was "an attempt by the prosecution to communicate impressions by innuendo when there was no evidence on which to base the queries." *Commonwealth* v. *Key*, 381 Mass. 19, 30 (1980).

5. The judge could properly refuse to consider the defendant's motions challenging the composition of the jury lists (see G. L. c. 234, § 4, as amended by St. 1975, c. 713) from which were drawn the grand jury that indicted him and the petit jury that was to try him. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, a case arising in the same county as the instant one. In passing, we add that notwithstanding the defendant's failure to comply with Rule 61 of the Superior Court (1974), there is ample support in the record for the judge's finding that these several "motions were filed on January 12, 1977, in a last effort to avoid or delay his trial as [already] scheduled for the January, 1977 sitting." Cf. *Commonwealth* v. *Cooper*, 356 Mass. 74, 78-79 (1969). That finding is entitled to substantial deference by this court. *Commonwealth* v. *Scanlan, supra* at 176. The judge found that the respective jury pools would have been completed not later than July, 1975 (grand), and July, 1976 (petit). The judge also felt obliged to go forward with the trial because the codefendant was being held in custody without bail. Moreover, it is not without significance that delay might have affected the continued availability of the key witness Golon. In those circumstances the decision whether to entertain such motions was discretionary. We see no abuse of that discretion. See *Commonwealth* v. *Perkins*, 6 Mass. App. Ct. 964 (1979).

*Judgments affirmed.*

*William C. Newman & Thomas Lesser* for the defendant.

*Thomas G. Simons*, District Attorney, *& Stephen R. Kaplan*, Assistant District Attorney, for the Commonwealth, submitted a brief.