APPEALS COURT 
 
 COMMONWEALTH vs. MARCUS D. ANDING

 
 Docket:
 23-P-646
 
 
 Dates:
 March 1, 2024 – October 7, 2024
 
 
 Present:
 Neyman, Hershfang, & Hodgens, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Firearms. Search and Seizure, Warrant, Affidavit, Probable cause. Constitutional Law, Probable cause. Probable Cause. Practice, Criminal, Motion to suppress, Warrant, Affidavit.
 
 

  
      Indictments found and returned in the Superior Court Department on March 2, 2022.
      A pretrial motion to suppress evidence was heard by Elaine M. Buckley, J.
      An application for leave to prosecute an interlocutory appeal was allowed by Dalila Argaez Wendlandt, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.
      Rose-Ellen El Khoury, Assistant District Attorney, for the Commonwealth.
      Mathew B. Zindroski for the defendant.
      HODGENS, J.  Authorized by a search warrant, State police seized a firearm and ammunition from a storage facility.  A grand jury later returned indictments against the defendant, Marcus D. Anding, for carrying a firearm without a license (G. L. c. 269, § 10 [a]) and possession of ammunition without a firearms identification card (G. L. c. 269, § 10 [h] [1]).  A Superior Court judge concluded that the affidavit in support of the warrant lacked probable cause and allowed a motion to suppress.  A single justice of the Supreme Judicial Court allowed the Commonwealth's application for an interlocutory appeal and directed the appeal to this court.  We reverse.
      Background.  On July 9, 2020, a magistrate of the Falmouth District Court issued a search warrant for a storage unit in Hyannis.  The warrant issued based on State police Trooper John Hanafin's seven-page, single-spaced affidavit that included a confidential informant's (CI) tip received earlier that month.  That affidavit outlined an investigation of drug and firearm trafficking by the defendant and Dajion Walters.  Pursuant to the warrant, investigators seized a firearm, ammunition, and two articles of clothing from the storage unit.  Following a hearing, a Superior Court judge suppressed the seized evidence after concluding that the affidavit failed to establish the veracity of the CI's tip that the firearm would be found in the storage unit.  
      Discussion.  Our de novo review "'begins and ends with the four corners of the affidavit,' from which we draw all reasonable inferences" (citation omitted).  Commonwealth v. Dunn, 494 Mass. 42, 47 (2024).  To establish probable cause, the affidavit must contain enough information for the magistrate to determine that the police seek items "related to criminal activity" and that the items described "reasonably may be expected" to be found in the place to be searched (citation and quotation omitted).  Commonwealth v. Robinson, 493 Mass. 775, 780 (2024).  The probable cause standard "is not a high bar" to clear.  Kaley v. United States, 571 U.S. 320, 338 (2014).  Accord Dunn, 494 Mass. at 48.  Reading the affidavit in a "commonsense and realistic" fashion, United States v. Ventresca, 380 U.S. 102, 108 (1965), and giving "considerable deference" to the magistrate who issued the search warrant, Commonwealth v. Anthony, 451 Mass. 59, 69 (2008), we conclude that the affidavit established that a firearm related to criminal activity would be found in the storage unit.
      According to Trooper Hanafin's affidavit, the CI met with investigators in July 2020 and reported that "[Dajion] Walters has a tactical Micro Draco 7.62 x 39mm semi-automatic AK pistol hidden" in unit 3162 at Hyannis Sun Self Storage.  At issue here is whether that tip was sufficiently trustworthy under the familiar Aguilar-Spinelli test requiring that the affidavit also demonstrate the informant's "basis of knowledge" and "veracity."  Commonwealth v. Upton, 394 Mass. 363, 375 (1985).
      1.  Basis of knowledge.  The affidavit here indicated that the CI obtained the knowledge of the firearm's location through personal observation while in the presence of the defendant and Walters.  According to the affidavit, on July 5, 2020, the CI drove Walters and the defendant to the storage facility "so that they could look at" the firearm (also described by the CI as an "assault weapon" or "Draco rifle").  Walters and the defendant "talked about 'using the Draco soon.'"  The CI sent the trooper a photograph "of a similar looking Draco firearm."  These facts and reasonable inferences satisfied the basis of knowledge test by demonstrating that the "informant personally observed" the firearm in the storage unit while in the company of the defendant and Walters.  Commonwealth v. Warren, 418 Mass. 86, 89 (1994).  See Commonwealth v. Desper, 419 Mass. 163, 166 (1994) (basis of knowledge satisfied where "informant personally observed the defendants carrying firearms and selling drugs"); Commonwealth v. Oliveira, 35 Mass. App. Ct. 645, 647 (1993) (basis of knowledge satisfied where "informant averred direct contact with" defendant).  The CI's personal observations here distinguished this tip from "a casual rumor circulating in the underworld."  Commonwealth v. Robinson, 403 Mass. 163, 165 (1988).
      2.  Veracity.  Veracity is established by either the "credibility of the informant or the reliability of [the] information."  Commonwealth v. Blake, 413 Mass. 823, 826 (1992).  Nothing in the affidavit referenced the CI's history of providing tips that were "shown to be accurate."  Commonwealth v. Lapine, 410 Mass. 38, 42 (1991).  Consequently, we are unable to assess the CI's credibility based on a "track record."  Id. at 41-42.  Nevertheless, if an affidavit does not establish the CI's credibility, we may look to "other evidence" including "police corroboration" within the affidavit to establish the reliability of the information.  Commonwealth v. Monterosso, 33 Mass. App. Ct. 765, 768-769 & n.3 (1992).  Here, other such evidence along with extensive police corroboration combined to establish the reliability of the tip.
      The CI was not anonymous and not a stranger to investigators.  Police investigators knew the CI's name, address, and phone number and "documented" the CI as an informant with the Massachusetts State Police Cape Cod Drug Task Force.  Police knowledge of the CI's identity is a "factor that weighs in favor of reliability."  Commonwealth v. Alfonso A., 438 Mass. 372, 376 (2003).  More weight is accorded to the reliability of the tip when an informant's identity is known to the police because the informant loses "the protection from the consequences of prevarication that anonymity would afford."  Commonwealth v. Love, 56 Mass. App. Ct. 229, 234 (2002), quoting United States v. Lopez-Gonzalez, 916 F.2d 1011, 1014 (5th Cir. 1990).  Moreover, before Trooper Hanafin completed the affidavit, the CI provided investigators with directions to the storage facility, accompanied them on the trip, and led them to unit 3162.  Such close contact during the investigation provided investigators with an "opportunity to question" the CI to verify information and served to further enhance the reliability of the tip.  Commonwealth v. Burt, 393 Mass. 703, 710 (1985).
      Beyond being based on personal knowledge of a known CI who met with investigators, the tip also bore a level of precision that bespoke reliability.  See Commonwealth v. Aarhus, 387 Mass. 735, 744 (1982).  The tip included an extremely detailed description of the firearm's characteristics, the precise location where it would be found, and the identity of the person believed to be storing the weapon (Walters).  While detail, by itself, does not ordinarily suffice to establish reliability, "it remains a factor in the over-all assessment."  Alfonso A., 438 Mass. at 376-377.  See, e.g., Aarhus, 387 Mass. at 744 ("the precise description of the location of the knife from an informant known to the authorities tended to demonstrate the reliability of his information"); Commonwealth v. Fleurant, 2 Mass. App. Ct. 250, 253 (1974) (reliability demonstrated by "specificity of the information supplied").
      Independent police investigation also linked Walters to the storage unit, thereby corroborating the tip and establishing that a crime was indeed afoot.  On July 8, 2020, troopers went to Hyannis Sun Self Storage, spoke with management, verified the existence of unit 3162, and learned that Shelbie Eldridge rented that particular unit.  Based on surveillance of Walters, troopers knew Eldridge as Walters's girlfriend.  By corroborating a "critical component" of the tip (linking Walters to the storage unit through his girlfriend), the investigation provided a "strong indicator of reliability."  Alfonso A., 438 Mass. at 377.  Investigators also determined that the defendant, Walters, and Eldridge lacked valid licenses to carry or firearms identification cards.
      Apart from the tip about the storage unit, the police investigation verified additional information provided by the CI about a drug trafficking organization involving the defendant and Walters.  The CI reported the defendant:  used rented vehicles to conceal his movements; noticed a pole camera installed by the police outside a particular residence; considered a certain named individual to be a "rat"; lost his first named drug supplier to a murder; and obtained a new drug supplier who lived behind a local restaurant.  The police investigation verified each assertion:  officers saw the defendant and Walters using rented vehicles; the police had previously installed a pole camera outside the particular residence to watch a suspected drug trafficking operation; the named "rat" reported the drug trafficking operation to the police; the drug supplier had been murdered; the police found illegal drugs in the new drug supplier's residence behind the local restaurant; and criminal records of the defendant and Walters included recent drug charges.  Corroboration of these specific details, "not easily obtainable by an uninformed bystander," Commonwealth v. Motta, 34 Mass. App. Ct. 921, 922 (1993), gave the police a "logical reason to believe that the informant could be relied upon to be telling the truth about" the firearm in the storage unit.  Commonwealth v. Cast, 407 Mass. 891, 900 (1990).
      Based upon the foregoing, the affidavit established the requisite probable cause that "the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues."  Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).  Nothing more was required.
      We disagree with the defendant's contention that the affidavit was deficient because it failed to "sufficiently corroborate" the defendant's connection to the firearm.  Although the CI reported that "[Dajion] Walters has a tactical Micro Draco 7.62 x 39mm semi-automatic AK pistol hidden" in the storage unit, the affidavit did not have to demonstrate that the defendant possessed the firearm.  Probable cause to search is distinct from the question of probable cause to arrest or proof of guilt of a particular person.  See Brinegar v. United States, 338 U.S. 160, 173 (1949).  The critical element here is not that the defendant "is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).  Accord Commonwealth v. Skea, 18 Mass. App. Ct. 685, 695 (1984) (probable cause to search is not always congruent with probable cause to arrest).  For example, "a warrant may issue to search the premises of anyone, without any showing that the occupant is guilty of any offense whatever."  Zurcher, supra at 556 n.6, quoting T. Taylor, Two Studies in Constitutional Interpretation 48–49 (1969).  See Cinelli, 389 Mass. at 213 (probable cause to search where items sought related to "criminal activity" and expected to be found at place to be searched).  Any question related to the sufficiency of evidence connecting the defendant to the firearm (as opposed to Walters or Walters's girlfriend, who also could access the storage unit) is properly left for trial.
      3.  Review of magistrate's decision.  Though acknowledging the need to review the "four corners" of the affidavit, the judge considered probable cause lacking after expressly limiting her consideration of the affidavit to the arguments stressed by the prosecutor:  "the court will address only those examples of corroboration specifically raised by the Commonwealth."  To the extent the judge may have limited her consideration of the entire seven-page, single-spaced affidavit to the handful of facts specifically identified by the Commonwealth, we briefly comment.
      Whether in the trial court or in an appellate court, review of a magistrate's decision to issue a search warrant "always begins and ends with the 'four corners of the affidavit.'"  Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), quoting Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428 (1995).  This oft-repeated phrase reflects the exclusive and determinative role of the police affidavit that must contain "the facts, information, and circumstances" to justify issuance of the warrant.  G. L. c.  276, § 2B.
      The affidavit requirement enables the Commonwealth to "demonstrate by a writing that any given search and seizure was reasonable and based upon probable cause."  Commonwealth v. Monosson, 351 Mass. 327, 330 (1966).  "The surest way to achieve this purpose is the preservation in the affidavit presented to the magistrate of a statement of the grounds relied upon for issuing the warrant."  Id.  "The magistrate considers a question of law:  whether the facts presented in the affidavit and the reasonable inferences therefrom constitute probable cause."  O'Day, 440 Mass. at 297.  Judicial review of the magistrate's decision is logically "limited to those facts which the magistrate had before him as contained in the affidavit."  Fleurant, 2 Mass. App. Ct. at 253.  Thus, through the warrant application procedure, the question of probable cause is fixed at a moment in time by the affidavit and is neither diminished nor enhanced by factors that are not set forth in the affidavit or attached exhibits.
      Here, instead of considering all the corroborative facts in the affidavit, the motion judge considered the corroborative facts gleaned and articulated by the prosecutor.  She then concluded, "the limited corroboration identified by the Commonwealth was insufficient to bolster the veracity of the CI's tip pursuant to Aguilar-Spinelli."  Such a truncated analysis falls short of the required review of the "four corners of the affidavit."  O'Day, 440 Mass. at 297.
      Probable cause is not established by the prosecutor's interpretation of the affidavit nor by the quality of the prosecutor's presentation to the motion judge; rather it is established by the police officer's affidavit setting forth "that quantum of evidence from which the magistrate can conclude" items connected to a crime are likely to be found.  Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 509 (2019).  Because an affidavit "must be judged by the facts it contains," United States v. Harris, 403 U.S. 573, 579 (1971), probable cause cannot be vitiated by a prosecutor (or a court for that matter) highlighting some, but not all, of the corroborative facts contained in the affidavit.
      Especially given the length and complexity of the affidavit here, we appreciate the challenge faced by the motion judge in these circumstances.  The affidavit, assembled during an ongoing police investigation involving multiple law enforcement agencies, summarized months of police activity and reflected the "hurly burly world" of police work, Commonwealth v. Luthy, 69 Mass. App. Ct. 102, 109 n.10 (2007), where officers expeditiously seek a warrant before a firearm can be used or the information becomes stale.  See, e.g., Harris, 403 U.S. at 579 ("affidavit should not be judged as an entry in an essay contest" [citation omitted]).  Unlike a defendant who must file a memorandum of law specifying the grounds for suppression under a warrant or risk waiver, Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), the Commonwealth had no obligation to file a written response itemizing corroborative facts.  Indeed, the Commonwealth did not initially file any response and later filed a very brief memorandum only after the motion hearing when requested by the judge.  Nevertheless, where "the defendant shoulders the burden of establishing that evidence has been illegally obtained in cases where a search is conducted pursuant to a warrant," Commonwealth v. Westerman, 414 Mass. 688, 691 (1993), the focus must remain on an independent and comprehensive review of the entire affidavit, even if the Commonwealth's opposition is less than helpful at distilling the dispositive facts.  See, e.g., Commonwealth v. Delossantos, 492 Mass. 242, 249 (2023) ("the burden of compliance with the particularity requirement of [Mass. R. Crim. P.] 13 (a) (2) falls on the defendant alone" in suppression hearings).
      4.  Conclusion.  We conclude that the entirety of Trooper Hanafin's affidavit contained enough information for the magistrate to determine that the police sought items related to criminal activity and that the items described could reasonably be expected to be found in the storage unit.
      
Order allowing motion to suppress reversed.