CommonWEALTH *vs.* Allan W. Stewart, Jr.
(and five companion cases [1]).

Franklin.    September 22, 1970. — March 1, 1971.

Present: Spalding, Cutter, Spiegel, Reardon, & Quirico, JJ.

*Search and Seizure. Probable Cause. Evidence,* Presumptions and burden of proof.

The burden on an affiant submitting an affidavit in support of an application for a warrant to search a specified apartment for described articles was not to show beyond a reasonable doubt that the articles were in the apartment but to provide a substantial basis for such a conclusion. [749]

---

[1] The companion cases are against Richard K. Garon.

An affidavit by a State police officer in support of an application for a
     search warrant for narcotic drugs, and a parking meter head owned by
     a town, in a particular apartment in the town, sought as a result of a
     narcotic drug investigation in the town by State and town police, suf-
     ficiently set forth the underlying circumstances from which informers
     drew their conclusions of illegal activities in the apartment and on
     which they based their statements to the police, and sufficiently set
     forth the underlying circumstances from which the affiant, and the
     person issuing the warrant, concluded that the informers were credible
     or that their information was reliable, including a recital of a test cor-
     roborating an informer's statement that certain material which he had
     obtained in the apartment was marihuana, and the information in the
     affidavit justified the conclusion that probable cause existed for the
     issuance of the warrant. [751–752]

Six complaints received and sworn to in the District
Court of Franklin on November 6, 1968.

Upon appeal to the Superior Court, motions to suppress
were heard by *Hale*, J.

*Reuben Goodman* (*Alexander Whiteside, II*, with him) for
the defendants.

*Stanley L. Cummings*, Assistant District Attorney, for the
Commonwealth.

Quirico, J. The defendant, Allan W. Stewart, Jr., was
convicted on a complaint charging him with being present
where a narcotic drug was illegally kept. The defendant,
Richard K. Garon, was convicted on five complaints charg-
ing him with the following crimes: unlawful possession of
a narcotic drug, unlawful possession of harmful drugs, un-
lawful possession of hypodermic needle and syringes, being
present where a narcotic drug was illegally kept, and con-
cealing stolen property.

The drugs, hypodermic needle, syringes and allegedly
stolen property had been seized by the police in the execu-
tion of a search warrant. The sole issue raised by each
bill of exceptions is the sufficiency of the affidavit in support
of the application for the search warrant. The defendants
seasonably moved to suppress the evidence seized pursuant
to the warrant. Their motions were denied and they ex-
cepted to such denials.

The warrant involved in these cases authorized a search
of an apartment occupied by the defendant Garon. The

articles described in the warrant as the objects of the search were "marijuana, hypodermic needles and syringes, parking meter head — property of the Town of Greenfield." The "magistrate" issuing the warrant was the clerk of a District Court.

A basic limitation on the issuance of search warrants is the requirement that there be a showing of probable cause before one may issue. This limitation by its very terms recognizes the vast difference between proof of guilt beyond a reasonable doubt on the one hand and proof of probable cause to believe a fact or facts on the other hand. "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' . . . And this 'means less than evidence which would justify condemnation' or conviction . . . . Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar* v. *United States,* 338 U. S. 160, 175–176. *Commonwealth* v. *Lillis,* 349 Mass. 422, 424.

Applying this general rule to the present cases, the burden on the Commonwealth in applying for a search warrant was not to provide an affidavit which convinced the issuing magistrate beyond a reasonable doubt that there were narcotic drugs, hypodermic needles and syringes and a parking meter head in the defendant Garon's apartment. If the affidavit provided the magistrate with a substantial basis for concluding that any of such articles was probably present in the apartment, that is sufficient. *Jones* v. *United States,* 362 U. S. 257, 271. *Rugendorf* v. *United States,* 376 U. S. 528, 533.

The defendants do not contend that the affidavit may not be based on hearsay information or that it must reflect the direct personal observations of the affiant. *Jones* v. *United States, supra,* 269–271. They rely, however, on the holding in *Aguilar* v. *Texas,* 378 U. S. 108, 114, that when, as in these cases, the affidavit is based on hearsay, "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.' " *Spinelli* v. *United States,* 393 U. S. 410, 415.

In determining whether the affidavit before us complies with the rules stated above we follow the further rule that the affidavit "must be tested and interpreted by . . . [this court] in a commonsense and realistic fashion," that we "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner," and that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* 380 U. S. 102, 108–109.

Testing the affidavit before us in this manner, we conclude that it was legally sufficient. We summarize the facts stated therein, but not in the same order. The affiant was an officer with the Criminal Information Bureau of the Massachusetts State police. There had been a narcotic drug investigation in the town of Greenfield prior to the date of the affidavit, November 5, 1968. On November 3, 1968, "an informer, known to be a reliable person" received a manila envelope containing plant fragments and seeds at the Garon apartment. He gave it to Officer Joseph Lachance of the town's police department, and the latter gave it to his superior, Captain Donald Grogan. On November 5, 1968, Captain Grogan spoke to the same person, whom he knew to be a reliable informant, who told him that he had been in the Garon apartment within the prior three days and had seen a parking meter head there, that he had personal

knowledge of parties at that apartment which lasted well into the morning hours, and that a number of young people both male and female frequently spent the entire night at the apartment. On November 4, 1968, the affiant talked with "a reliable citizen of the town" who told him (a) that there were drug parties, and that illegal drugs, including marihuana, were being kept in the Garon apartment, and (b) that he had had a conversation with a person who was formerly an occupant of the apartment who had seen hypodermic needle and syringe and marihuana and other drugs he could not identify in the apartment on Thursday, October 31, 1968. On November 5, 1968, the affiant and Captain Grogan took the manila envelope containing the plant fragments and seeds to the Department of Public Health Food and Drug Laboratory at Amherst where, in their presence, the fragments and seeds were tested by an assistant analyst and found by him to contain marihuana, a narcotic drug as defined in G. L. c. 94, § 197.

The sufficiency of the affidavit is to be decided on the basis of a consideration of all of its allegations as a whole, and not by first dissecting it and then subjecting each resulting fragment to a hypertechnical test of its sufficiency standing alone.

The affidavit sufficiently states the underlying circumstances from which the informers drew their conclusions and on which they based the statements which they gave to the police. One informer had been in the Garon apartment, had received a manila envelope containing marihuana while there, had seen the parking meter head there, and had personal knowledge of parties held there. He turned the envelope and marihuana over to the police. The other informer told the police that a hypodermic needle and syringe, and marihuana and other drugs were kept in that apartment, and he based that statement on what had been told him by a former occupant of the apartment. He gave additional information about drugs and drug parties at the apartment without stating his source of such information.

The affidavit also sufficiently states the underlying cir-

cumstances from which the officer making it, and the magistrate issuing the search warrant, concluded that the informants were credible or that their information was reliable. It included more than mere statements that the information was reliable. The information was received by the police as the result of a narcotic drug investigation in the town, with both town and State police participating. The information stemming from two different persons who had been in the apartment was consistent on the central issue of the presence there of drugs and related paraphernalia. The police put the reliability of one informer to a test by having the contents of the manila envelope which he obtained in the apartment and gave to them tested in a laboratory. The results of the test corroborated his statement that the material was marihuana. This was done before a search warrant was sought. The fact that this informer by his own admission was a participant in the violation of the narcotics laws (G. L. c. 94, § 213A) while at the Garon apartment is a factor which we have said tends further to show the reliability of the information which he gave. *Commonwealth* v. *Lepore,* 349 Mass. 121, 123. *Commonwealth* v. *Owens,* 350 Mass. 633, 635–636, *S. C.* sub nom. *Owens* v. *Scafati,* 273 F. Supp. 428, 429 (D. Mass.), cert. den. 391 U. S. 969. *Commonwealth* v. *Saville,* 353 Mass. 458, 461.[2]

The information in the affidavit taken as a whole, together with the inferences which reasonably could be drawn from the information by a judicial mind, justified the conclusion that probable cause existed to make a search of the defendant Garon's apartment. *Commonwealth* v. *Moran,* 353 Mass. 166, 170. *Commonwealth* v. *Brown,* 354 Mass. 337, 345. *Commonwealth* v. *Pope,* 354 Mass. 625, 628. *Commonwealth* v. *Ellis,* 356 Mass. 574, 578.

*Exceptions overruled.*

---

[2] For further proceedings on the *Saville* case, see *Saville* v. *Scafati,* 297 F. Supp. 397 (D. Mass.), and *Saville* v. *O'Brien,* 420 F. 2d 347 (1st Cir.), cert. den. sub nom. *O'Brien* v. *Saville,* 398 U. S. 938.