COMMONWEALTH *vs.* PETER R. PISO.

Suffolk.    June 14, 1977. — July 22, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Search and Seizure.   Probable Cause.*

Findings of a police investigation of larceny of money from parking meters, during which marked coins were traced to two men, followed by police observation of the same two men removing money from parking meters, were sufficient to provide probable cause to arrest the two men. [540-541]

There was no improper delay in the arrest of two men charged with larceny from parking meters, where police officers who had observed the men removing money from nine parking meters, continued to watch them until they had returned to their automobile before making the arrest. [541]

Where two men charged with larceny from parking meters were lawfully arrested in an automobile stopped on a public street and police had probable cause to believe the automobile contained contraband, seizure of the car was justified and an immediate warrantless search of it was reasonable. [541-542]

Detailed information contained in a police officer's affidavit in support of a warrant for the search of a defendant's apartment was sufficient, notwithstanding minor inaccuracies, to establish probable cause, and the warrant identified the objects to be seized with sufficient particularity. [542-544]

INDICTMENTS found and returned in the Superior Court on July 19, 1975.

Pretrial motions to suppress were heard by *McGuire,* J.

*Joan C. Schmidt* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.    The defendant Peter R. Piso[1] was tried and convicted on four indictments charging him with larceny, possession of burglarious implements, possession of a firearm without an identification card, and receiving stolen goods. He appeals pursuant to G. L. c. 278, §§ 33A-33G, assigning as error the denial of his motion to suppress evidence obtained during a search of the car which he was in when arrested and the denial of his motion to suppress evidence obtained in a search of his apartment pursuant to a warrant.

The facts as found by the motion judge following the pretrial hearing on the motions to suppress are as follows. Shortly after 11:00 P.M. on July 8, 1975, Detectives Walsh and Lydon and Sergeant Ryan of the Boston police department, riding in an unmarked police car, observed a 1971 Mercury traveling along New Congress Street toward North Station. Walsh recognized the car as one frequently operated by the defendant. The officers suspected that Piso was involved in an ongoing scheme involving larceny of large amounts of money from parking meters. The officers followed the Piso car for about ten to fifteen minutes before it stopped along the curb on Blossom Street near Cardinal O'Connell Way. Leaving their car parked on an adjacent street, the officers took up a position behind some shrubbery bordering Blossom Street directly across from the place where the Piso car had been parked.

Walsh and the other officers observed Piso and Bamonte alight from the car and go over to the first of five parking meters situated on the west side of Blossom Street and take up positions on either side of the meter, Piso on the gutter side of the meter and Bamonte on the sidewalk side. Walsh then observed Piso and Bamonte open the meter, remove the coin box and place the coins in a purple bag. The procedure took about thirty seconds to complete, at which point the two men were observed to walk to the second of

---

[1] Codefendant Bernard Bamonte was indicted and convicted at a joint trial with the defendant on similar charges. His conviction is not before us on this appeal.

the five meters on the west side of Blossom Street and re-move coins therefrom. As the officers watched from their vantage point behind the shrubbery, Piso and Bamonte performed the same operation on the remaining three me-ters on the west side of Blossom Street and then returned to the car.

After approximately twenty to thirty seconds, the de-fendant and Bamonte left their car for the second time, crossed the street, and opened the four meters located on the east side of Blossom Street. They then returned to the car. Upon seeing them enter their car, the officers immedi-ately got into their own car, and Walsh drove it across Blossom Street and pulled up directly behind the Piso car, blocking it in behind a car which was parked in front of the Piso car. Lydon and Ryan immediately took the defendant and Bamonte out of their car and searched them. Walsh searched the car. He found a key made from copper tubing and a purple bag containing 238 coins. The bag resembled that in which Walsh had seen the defendant and Bamonte place coins taken from the meters and which he had seen Piso carrying when the two men had returned to the Piso car. Walsh also found $4.60 in loose change, a brass object five or six inches in length, a flashlight, an envelope con-taining two copper keys, and two travel bags, one of which contained three empty bags similar to the one which con-tained coins.

In addition to his testimony concerning the events sur-rounding the arrest of the defendant on July 8, 1975, upon which the judge made the findings summarized above, Walsh described to the court the course of a three-month investigation concerning larceny of parking meter money. By means of his own observations and investigation, Walsh had learned that Bamonte was periodically exchanging very large numbers of coins for paper currency at The First National Bank of Boston and that he had been observed on one occasion handing a sum of currency to Piso shortly after emerging from the bank. With the cooperation of the commissioner of the traffic and parking authority, Walsh and his colleagues had planted marked quarters in several

designated parking meters at regular time intervals beginning in late May or early June. Thereafter, a number of the marked coins were recovered on various dates from among coins exchanged by Bamonte at the bank.

After the arrest on the night of July 8, Detective Walsh applied for a warrant to search the defendant's apartment. The information contained in the lengthy affidavit mixed direct observations with an inference drawn by Walsh (and approved by the magistrate) that evidence of parking meter larcenies could be found at the defendant's residence. The affidavit was dictated by Walsh and typed by a fellow officer at 3:00 A.M., after both officers had been working all night.

The warrant was executed by the police early on the morning of July 9, 1975. During the course of their search, the police found eighty-four assorted parking meter keys, sixty-eight meter locks and cylinders, nine parking meter money boxes, a parking meter vault door, a brown wooden box containing a set of locksmith's tools, numerous rolls of coins of various denominations, coin wrappers, other items associated with the theft of coins from parking meters, and also revolvers with ammunition.

*The Search of the Automobile.*

The defendant claims that the search of the car in which he was arrested was illegal because the arrest was not based on probable cause. "Probable cause exists where the facts and circumstances within . . . [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971), quoting from *Brinegar* v. *United States*, 338 U. S. 160, 175-176 (1949). As the motion judge stated in his findings, the combination of the officers' previously obtained knowledge and their direct personal observations of the defendant and Bamonte removing money from the coin boxes of nine parking meters operated to provide the officers with an undeniably sufficient amount of in-

formation to constitute probable cause to make the arrest. See *Commonwealth* v. *Mitchell*, 353 Mass. 426 (1967).

The defendant also contends that, if the police had probable cause to arrest him, they improperly delayed arresting him until he was back in his car in order to circumvent the warrant requirement for the search of the car. There was no improper delay. The United States Supreme Court declared in *United States* v. *Hoffa*, 385 U. S. 293 (1966), that there is no constitutional right to be arrested at a certain time and that the police are not required to guess the precise moment when they have probable cause. "Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *Id*. at 310. In the instant case the officers' decision to keep the defendant under surveillance until the operations were completed was not a deliberate or oppressive design to delay the arrest; rather, it was a sound police tactic designed to develop information necessary to support a conviction and did not invalidate the arrest.

The defendant next claims that the search of his automobile was illegal because it was conducted without a warrant and was not justified by exigent circumstances. It is true, as the defendant contends, that probable cause is not in itself sufficient to insulate a warrantless search from a Fourth Amendment challenge. "Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Chambers* v. *Maroney*, 399 U. S. 42, 51 (1970).

The exigent circumstances exception to the warrant requirement was first articulated by the United States Supreme Court in *Carroll* v. *United States*, 267 U. S. 132 (1925), where a warrantless search of an automobile was upheld upon a finding of probable cause and the additional circumstance that the automobile containing contraband, which could easily have been removed or destroyed, was stopped on a highway, and thus it would have been imprac-

tical to secure a warrant. *Id.* at 153-156. In *Chambers, supra,* the Court observed that where the surrounding circumstances furnish probable cause to search, "if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." The Court concluded that there was no practical difference between seizing and holding the car while obtaining a warrant and an immediate search without a warrant. "Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.* at 52. The police here clearly had probable cause to believe that the car contained contraband. In addition, the car was on a public street, and there was a real danger that if they left the car on the street, the contents would be removed before a warrant could be obtained. Seizure of the car was therefore justified, and under the rule of *Chambers, supra,* an immediate search was reasonable, and the evidence obtained was properly admitted. There is no merit to the argument that the scope of the search was too broad or that the articles seized were not within the limits set by G. L. c. 276, § 1.

## *The Search of the Apartment*

The defendant contends that the affidavit in support of the search warrant failed to establish probable cause for the search. The standard for probable cause in an affidavit for a search warrant is similar to that for probable cause to arrest. See *Gerstein* v. *Pugh,* 420 U. S. 103, 111-112 (1975). If the affidavit provided the magistrate with a substantial basis for concluding that any of the articles listed in the affidavit was probably present in the apartment, that was sufficient. *Commonwealth* v. *Stewart,* 358 Mass. at 749.

As the motion judge indicated, the detailed nature of the information known to the officer as set forth in the affidavit fully and amply supported the conclusion that evidence of the larceny of parking meter proceeds would be found in the defendant's apartment. "[T]he information contained

in the [affidavit], taken as a whole, together with the inferences which reasonably could be drawn from such information provided ample justification for a judicial mind to conclude the existence of probable cause." *Commonwealth* v. *Moran,* 353 Mass. 166, 170 (1967). The affidavit fully complied with the requisites of G. L. c. 276, § 2B, as appearing in St. 1964, c. 557, § 3, in that it set forth "facts, information, and circumstances ... sufficient ... for the issuance of the warrant."

The defendant further contends that the affidavit contained three factual misstatements which, he claims, appear deliberate, or at least reckless, and must result in suppression of the evidence obtained pursuant to the warrant. He also contends that there is no probable cause if these statements are excluded. The Commonwealth admits that the affidavit contained the inaccuracies mentioned but claims that such inaccuracies were inadvertent, resulting from hurried typing of the affidavit in the early morning hours when no secretarial assistance was available and after the officers had worked all night. As the defendant argues, evidence obtained pursuant to a search warrant based on an affidavit containing an intentional, relevant and nontrivial misstatement must be suppressed. *Commonwealth* v. *Sheppard, post,* 765 (1977). *United States* v. *Belculfine,* 508 F. 2d 58, 63 (1974). However, we agree with both the finding of the judge that the misstatements here were not made in bad faith and did not affect the integrity of the affidavit as a whole, and with his finding and ruling that the inaccuracies complained of were inconsequential and had no debilitating effect upon the existence of probable cause to search the apartment.

The defendant also argues that the search of his apartment was invalid because the warrant did not describe the articles to be seized with sufficient particularity. The warrant here was found by the judge to identify the objects to be seized sufficiently to meet the particularity requirement. We agree. "[T]he rigors of an average criminal investigation are not to be intensified by a pecksniffian attention to

noncrucial detail on review." *Commonwealth* v. *Murray,* 359 Mass. 541, 548-549 (1971), quoting from *Commonwealth* v. *Von Utter,* 355 Mass. 597, 600 (1969).

There is no merit to either of the other points argued by the defendant.

*Judgments affirmed.*