COMMONWEALTH *vs.* GERALD J. DiANTONIO
(and two companion cases[1]).

Worcester.    September 14, 1979. — October 12, 1979.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Search and Seizure. Probable Cause.*

Affidavits in support of two search warrants for gambling apparatus
   contained sufficient details to establish the credibility of an inform-
   ant and the reliability of his information, and the information in
   the affidavits was sufficient to warrant a finding of probable cause
   to search the premises named therein. [435-440]

INDICTMENTS found and returned in the Superior Court
Department on January 11, 1979.

The cases were heard by *McCooey,* J., a District Court
judge sitting under statutory authority.

*H. Hoover Garabedian* for the defendants.

*Lynn Morrill Turcotte,* Assistant District Attorney, for
the Commonwealth.

GREANEY, J. The defendants, Gerald J. DiAntonio and
Carol A. Slamin, were convicted after a jury waived trial
on gaming violations. DiAntonio was convicted on indict-
ments charging him with using a telephone to register
bets (G. L. c. 271, § 17A), and with a second offense within
a five-year period of being found in a place (11 Colonial
Road, Milford) with betting apparatus and devices. G. L.
c. 271, §§ 17 and 20. Slamin was convicted on an indict-
ment charging her with knowingly permitting her apart-
ment at 11 Colonial Road to be used for the purpose of
registering bets. G. L. c. 271, § 17. Prior to trial both

---

[1] One of the companion cases is against Gerald J. DiAntonio and the
other against Carol A. Slamin.

defendants moved to suppress incriminating gambling
evidence seized by the State police from the apartment at
11 Colonial Road in Milford pursuant to a search war-
rant. The motion was denied. The sole issue on appeal
concerns the sufficiency of two affidavits supplied to the
magistrate issuing the warrants (clerk of a District Court)
to establish probable cause. We are satisfied that the
material presented in the affidavits passes all applicable
constitutional standards and that probable cause was es-
tablished. As a result we affirm the convictions.

The affidavits in question were prepared by Trooper
Robert K. Haley of the State Police Special Service Unit
designated to investigate gaming and organized crime.
The first affidavit pertained to an investigation of DiAn-
tonio's activities in an apartment at 17 Mark Drive, Mil-
ford. This affidavit was used to obtain a search warrant
for that apartment, which issued on December 8, 1978,
and was returned unexecuted three days later because of
the receipt of information that the suspected gaming
operation had moved to a new address. The second affida-
vit pertained to an investigation of DiAntonio's activities
at Slamin's apartment at 11 Colonial Road, Milford. This
affidavit was used to obtain a second search warrant,
which was executed on December 14, 1978, and which
was used to gather much of the physical evidence pro-
duced at the trial.[2]

The affidavit as to 17 Mark Drive rested both on infor-
mation received from a confidential informant and on the
results of police investigation and observations. It indi-
cates that the informant had supplied information to the
State police in the summer of 1978 that led to the arrest
and conviction of six named Milford residents on a varie-
ty of gaming charges. Included among these six named

---

[2] A member of the State police team executing the warrant was
Trooper Patrick M. Greaney, who is neither related nor known to the
author of this opinion.

persons were Louis Lotfy,[3] Thomas A. Mullen, and the defendant, DiAntonio. The informant, known to the trooper, advised that DiAntonio was accepting wagers and giving out lines on athletic contests using telephone numbers 478-3479 and 473-4765. The informant also claimed to have registered bets and received lines on sporting events from DiAntonio at the two telephone numbers within four days of contacting the police. The informant indicated that the two telephones were listed in the names of other persons to avoid detection and that unknown males answered the phone when DiAntonio was not present.

The affidavit also details the following data of significance resulting from police investigation of the 17 Mark Drive address: the telephone numbers described above were listed to Daniel White of 17 Mark Drive and Master Tax Service, in care of Gene White at the same address; the name White was listed on a mailbox lettered "D" outside of the building at 17 Mark Drive and a "D" apartment was located on the first floor; DiAntonio was observed on various dates entering the building, and inside apartment "D"; telephone calls to 478-3479 by the trooper on six occasions resulted in the telephone going unanswered three times, two busy signals, and an answer on the first ring by a voice recognized as belonging to DiAntonio; three telephone calls by the trooper to 473-4765 resulted in two no answers and one response on the first ring by an unknown male. Louis Lotfy, one of the six convicted on the informant's information, was observed exiting the building on November 19, 1978, and DiAntonio was observed leaving the building on November 24, 1978, with Thomas A. Mullen, another convicted gambling entrepreneur. Stitching this material together was information by the informant that on December 4, 1978, he dialed 478-3479, talked to "Gerry," asked for and re-

[3] Lotfy's conviction under G.L. c. 271, § 17, of being found in a place with devices and apparatus for registering bets was affirmed by this court in *Commonwealth* v. *Lotfy, ante* 126 (1979).

Commonwealth *v.* DiAntonio.

ceived a point spread on a football game being played that night and placed a bet on the game. All of this material in the affidavit led to the issuance of the search warrant for the apartment at 17 Mark Drive on December 8, 1978, which was returned unexecuted on December 11, 1978, based on information that the apartment under surveillance had been abandoned,[4] and the gaming operations moved over the weekend to a new location listed to telephone number 473-2003.

The affidavit pertaining to the 11 Colonial Road investigation repeated practically all the foregoing data. The following new information was contained in that affidavit: telephone number 473-2003 was listed to Carol F. Slamin of 11 Colonial Road; the name "Slamin" was written on the mailbox for apartment 11 at the building at that address; a telephone call to 478-3479 at 17 Mark Drive by the trooper led to a conversation with an unknown male who indicated that "Gerry" was no longer there, and that "those people" had moved to a new location whose number could be obtained if you "go through the 'Elks' "; DiAntonio's car was observed parked outside the building at 11 Colonial Road, and he was observed entering the back door; and several telephone calls to 473-2003 encountered busy signals and on one occasion an answer by DiAntonio on the first ring. Finally, both affidavits contained a conclusion on the part of the officer that the actions described therein were consistent with the activities of persons engaged in illegal gaming.

The essence of the defendants' arguments with regard to the warrant is that the hearsay information given by the informant cannot survive the "two-pronged" reliability test developed in *Aguilar* v. *Texas,* 378 U.S. 108, 114

---

[4] The informant's tip that the use of the premises at 17 Mark Drive had been abandoned was corroborated by police observation on the evening of December 11, 1978, that the lights in apartment "D" were off, by police telephone calls to both numbers used at that apartment which went unanswered, and one call which was answered and conveyed information that the location had been changed.

(1964), and that the material supplied to the magistrate was insufficient overall to support a finding of probable cause that gaming violations were occurring at 11 Colonial Drive, Milford. Under *Aguilar*, the police may rely on hearsay information supplied by an informant in their affidavits for warrants if the affidavits inform the magistrate issuing the warrant of "some of the underlying circumstances" from which the informant derived the information he supplied the affiant and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was 'credible' or his information 'reliable.' " *Id.* See *Spinelli* v. *United States*, 393 U.S. 410, 415-416 (1969); *Commonwealth* v. *Stewart*, 358 Mass. 747, 750 (1971); *Commonwealth* v. *Stevens*, 362 Mass. 24, 26-27 (1972); *Commonwealth* v. *Hall*, 366 Mass. 790, 797 (1975); *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 764 (1978). If the informant's material, standing alone, is found to be insufficiently reliable under *Aguilar*, other independent allegations contained in the affidavit which corroborate the material should then be considered. *Spinelli* v. *United States*, *supra* at 415. *Commonwealth* v. *Anderson*, 362 Mass. 74, 75-76 (1972). *Commonwealth* v. *Avery*, 365 Mass. 59, 62-63 (1974). *Commonwealth* v. *Vynorius*, 369 Mass. 17, 20 (1975).[5]

The principal information supplied by the informant in this case satisfies the "underlying circumstances" "prong" of the *Aguilar* test. The affidavits recite that the informant had received lines from and placed bets with DiAntonio with a specification of the two telephone num-

---

[5] We determine it appropriate to examine the affidavits in light of the *Aguilar* standards because the affidavits are quite dependent on the informant's information which adds considerable gloss to the police observations. In this respect the affidavits differ from those considered in two recent cases where independent police observations were held sufficient to document the existence of probable cause apart from the informant's tips. See *Commonwealth* v. *Lotfy, ante* 126 (1979), and *Commonwealth* v. *Wingle, post* 905 (1979).

bers used for those purposes. An incriminating detail was supplied in the indication, established to be accurate, that the telephones were masked by the names of other persons to avoid detection. In the course of the investigation the informant received a line and placed a bet on a Monday night football game with "Gerry" at one of the identified telephone numbers. Also of significance was the accurate information that the operation had been moved from 17 Mark Drive to 11 Colonial Road over the weekend of December 8, 1978. It could be inferred that the informant had direct knowledge concerning DiAntonio's background and his methods in conducting his trade, based on personal observation and contacts which went materially beyond "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States, supra* at 416.

The affidavits also contain sufficient information to establish the reliability of the informant, the second "prong" of the *Aguilar* test. They describe six specific occasions on which the informant had furnished the police with accurate information regarding gambling activities in the Milford area which had led to the arrest and conviction of six named persons on a wide range of gambling charges. Included within the group was a conviction of DiAntonio on charges of being found with apparatus for registering bets and using a telephone for gaming purposes. A record of past performance running to this length carries its own persuasive indicia of authentication. See *Commonwealth* v. *Anderson,* 362 Mass. 74, 76 (1972); *Commonwealth* v. *Snow,* 363 Mass. 778, 783 (1973); *Commonwealth* v. *Hall,* 366 Mass. 790, 797 (1975); *Commonwealth* v. *Vynorius,* 369 Mass. 17, 21 (1975). See also 1 LaFave, Search and Seizure § 3.3(b) (1978). Moreover, the other information set forth in the affidavits fully corroborates the high points of the informant's story and provides additional basis for deeming him reliable. Details of the informant's story match the pattern of facts

developed by the independent police investigation. See *Commonwealth* v. *Stewart*, 358 Mass. 747, 752 (1971); *Draper* v. *United States*, 358 U.S. 307, 313 (1959).

We also conclude that the information in the affidavits, together with reasonable inferences that could be drawn therefrom, were sufficient to permit the District Court clerk who examined both affidavits to find it probable that the apartment at 11 Colonial Road was being used for registering bets or for conducting other gaming activities as a successor location to the premises at 17 Mark Drive. Without repeating all of the details described above, DiAntonio's comings and goings, telephone numbers hidden under other identities, calls encountering busy signals or answers on the first ring, movement of the operation from one location to another (inferably to avoid police detection), the registering of a bet by the informant, DiAntonio's prior gaming convictions, and observation of him with another convicted gambler, Thomas A. Mullen, were enough to "warrant a man of reasonable caution in the belief that" the object of the search is probably on the premises to be searched at the time the warrant is issued. *Commonwealth* v. *Stewart*, 358 Mass. at 749, quoting from *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949). The existence of probable cause is also supported by the inferences drawn by the experienced officer who signed the affidavits that the activities described therein were consistent with the use of the premises at 11 Colonial Road for illegal gaming activities. In this context, "weight must be given to the special experience of a law enforcement officer who has executed an affidavit. For example, where such an officer states that he has drawn inferences from facts which an inexperienced person might not draw from those facts, the magistrate may rely on those inferences." *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199 (1979). See also 1 LaFave, Search and Seizure § 3.2, at 463 (1978). While the recitation of a conclusion by an experienced police officer as to what the facts in the affidavit mean to him cannot

be used as a talismanic formula in every case to provide probable cause where evidence to support such a finding is otherwise lacking, it could be relied upon by the clerk in this case to support the existence of probable cause in conjunction with the facts and circumstances observed by the police in the course of the investigation.

Finally, we reject the defendant's reliance on the *Taglieri* decision, for the proposition that the affidavits failed to establish probable cause. Our reasons in this regard are fully explained in the decision in *Commonwealth* v. *Lotfy, ante* 126, 131-132 (1979). We also reject the defendants' contention that the affidavit pertaining to the 11 Colonial Road warrant should be considered separately and without reference to the information contained in the affidavit summarizing the investigation of the activities at 17 Mark Drive. The same clerk studied both affidavits and they are intrinsically linked together. To study the affidavits separately in the manner the defendants suggest would be to engage in the type of hypertechnical dissection of affidavits that has been rejected as an unsound method of analysis in this type of case. *Commonwealth* v. *Stewart*, 358 Mass. at 751. *Commonwealth* v. *Victor*, 1 Mass. App. Ct. 600, 601 (1973). See also *Commonwealth* v. *Alessio*, 377 Mass. 76 (1979).

*Judgments affirmed.*