COMMONWEALTH vs. JAMES WRIGHT
(and five companion cases[1]).

Middlesex.    October 7, 1982. — January 31, 1983.

Present: HALE, C.J., ROSE, & GRANT, JJ.

*Search and Seizure*, Affidavit, Probable cause.

An affidavit in support of an application for a search warrant which stated
that the defendants, two police officers, were on duty when a break at
a business establishment was reported and were present at the scene,
that their conduct in certain respects departed from normal police pro-
cedure in such circumstances, and that property stolen from the
establishment was later seen by other police officers at the home of one
of the defendants was sufficient to warrant issuance of a warrant to
search the home in which the stolen property was seen, but insufficient
to establish probable cause for a search of the home of the second de-
fendant. [246-251]

INDICTMENTS found and returned in the Superior Court
Department on February 3, 1981.

Motions to suppress evidence were heard by *Dimond*, J.

Applications for interlocutory appeals, filed in the Su-
preme Judicial Court for the county of Suffolk, were al-
lowed by *Liacos*, J., and the appeals were transferred by
him to the Appeals Court.

*James W. Sahakian*, Assistant District Attorney, for the
Commonwealth.

*Michael Reilly* for the defendants.

ROSE, J.   These cases are before the court for interlocu-
tory review of a Superior Court judge's rulings on each de-

---

[1] Two cases are against James Wright and three are against William
Mathews.

fendant's motion to suppress evidence.[2]  The homes of both
defendants were searched pursuant to search warrants issued
on the basis of the same affidavit, and both defendants
moved to suppress the evidence obtained in the searches. The
judge granted Mathews' motion to suppress but denied
Wright's motion.  The judge also denied Wright's requests
for evidentiary hearings concerning certain statements con-
tained in the affidavit.[3]

The issues in these cases focus on the sufficiency of the affi-
davit of Detective Lieutenant O'Halloran of the Massachusetts
State police to establish probable cause for the issuance of the
search warrants.  Therefore, the information and statements
contained in the affidavit must be reviewed in detail.

The affidavit states that the defendants, Officers Wright
and Mathews of the Burlington police department, were as-
signed to the same police cruiser at 1:58 A.M. on December
12, 1980, when the Burlington police station received a tele-
phone alarm from IVAC Corporation (IVAC).  The call
was broadcast over the police radio, and Officer Glejzer,
who was one-half mile from the scene, answered the call.
Mathews, however, broadcast that he was already at the
scene and that Officer Glejzer need not respond since there
was only a broken window.  A short time later Mathews
called for Sergeant Hyde, although normal police proce-
dure, according to the affidavit, would dictate calling the
closest officer, Officer Glejzer.  Sergeant Hyde arrived at
the scene.  The owner of IVAC could not be reached imme-
diately and did not arrive until approximately 3:00 to 3:30
A.M., after Sergeant Hyde had left the scene.  The owner re-
ported the following items as missing:  two color televisions,
one black and white television, three video tape decks, and
some adult and regular movies.

---

[2] The Commonwealth's application for an interlocutory appeal was al-
lowed by a single justice of the Supreme Judicial Court, as was the cross
application of Wright.  The single justice ordered the records assembled
and transmitted to this court for hearing and decision by a panel.

[3] Wright's application for interlocutory review of these rulings was
denied by the single justice.

Although police reports are normally filed after a tour of duty, according to the affidavit, Captain Rose and the file clerk did not find a report of the incident until one or two weeks before the filing of the search warrant affidavit, which was several weeks after the incident. The report, filed by Wright, stated that a dark 1969-1970 Chevrolet with three occupants was seen by the defendant officers leaving the scene of the crime and heading towards Lexington. This automobile was not pursued by the defendants although that was stated in the affidavit to be contrary to normal police procedure.

The affidavit further related that on December 15, 1980, Inspector Chicarello and Officer Glejzer spoke to the owner of IVAC who gave them additional information on the missing items. The owner stated that adult movies are regularly shipped to him in green containers but that he removes the films and puts them in light blue boxes. His routine practice is to place white tape on the boxes and write the names of the movies in black letters.

On December 22, 1980, at a gathering of police officers at the home of Officer Soda, Officer Glejzer, according to the affidavit, heard Wright say that anyone who wanted to come was invited to his house for "Super Sunday" to see the football game and watch adult movies. Inspector Chicarello overheard a conversation between Sergeant Devlin and Officer Patuto that adult movies would be shown at Wright's home on "Super Sunday." On January 3, 1981, a Burlington police officer stated that he overheard Wright tell other officers that his wife had given him a video tape player for Christmas.

On January 25, 1981, some police officers went to Wright's home for "Super Sunday." One of the officers had been shown the type of video tape players and movies stolen from IVAC. He saw a blue tape box and video tapes with white labels and black lettering at Wright's home. The titles of two adult movies shown at the "Super Sunday" gathering were among those noted on a list of the films stolen from IVAC. Mathews was among those present at

the "Super Sunday" gathering and was overheard to say that he had given his wife a video recorder for Christmas. He stated that he had adult movies but that he hadn't brought them because they were a tape size that didn't fit Wright's machine. According to the affidavit, one of the stolen video tape players and some of the stolen films were a different size and type from those seen at Wright's house.

Both the defendants claim that the search warrants were not properly issued because the affidavit was not legally sufficient to establish probable cause to believe that any of the stolen property would be found in their respective homes. In addition, Wright cites as an error of law the motion judge's rulings that evidentiary hearings regarding the validity of certain statements in the affidavit were not necessary.

In reviewing rulings on motions to suppress evidence uncovered in searches made pursuant to search warrants, this court must review the information contained in the affidavit which forms the basis for issuance of the warrant at issue in a "commonsense and realistic fashion," without resort to "hypertechnical" scrutiny. *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965). *Commonwealth* v. *Stewart*, 358 Mass. 747, 750 (1971). *Commonwealth* v. *Fleurant*, 2 Mass. App. Ct. 250, 252 (1974). *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 179 (1980). The standard of review to be applied is whether the affidavit presented a reasonable basis for a finding of probable cause by the judge issuing the warrant. *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert. denied, 444 U.S. 937 (1979). Probable cause, in turn, requires "more than mere suspicion" but a "lesser showing than that which is necessary to justify a conviction." *Commonwealth* v. *Grammo*, 8 Mass. App. Ct. 447, 450 (1979). In evaluating the affidavit, the information contained within it must be read as a whole and reasonable inferences are valid considerations. *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979). In close cases, preference is accorded to warrants. *Commonwealth* v. *Blye*, 5 Mass. App. Ct. 817 (1977). See *United States* v.

*Ventresca,* 380 U.S. at 109; *Commonwealth* v. *Alessio, supra* at 82.

Both defendants cite hearsay problems with the information contained in the affidavit. Although they acknowledge that hearsay information may be utilized by an affiant in connection with an application for a search warrant, they contend that the two-pronged test for such information set out in *Aguilar* v. *Texas,* 378 U.S. 108, 114-116 (1964), has not been met. See also *Spinelli* v. *United States,* 393 U.S. 410, 415-416 (1969); *United States* v. *Harris,* 403 U.S. 573 (1971). Both defendants argue that the specific source of much of the information set out in the affidavit is unclear, and that there is not sufficient indication of the reliability of the sources of the information.

Under the two-pronged test of *Aguilar* v. *Texas, supra,* an affidavit based upon hearsay information obtained from an informant must inform the issuing judge or magistrate of some of the underlying circumstances which led the informant to conclude that criminal conduct was involved, and some of the underlying circumstances which led the affiant to believe that the informant was reliable. In the instant case, the affidavit submitted by Detective Lieutenant O'Halloran named several police officers who related conversations and information to him. The fact that each specific statement in the affidavit is not attributed to a particular officer is not a fatal flaw. When read as a whole, it is obvious that detailed and specific information was relayed to O'Halloran by police officers who were not paid informants. See *Commonwealth* v. *Scanlan, supra* at 179; *Commonwealth* v. *Vynorius,* 369 Mass. 17, 22 (1975); *Commonwealth* v. *Cruz,* 373 Mass. 676, 684-685 (1977).

With respect to Wright, the affidavit was sufficient to support the determination of the Superior Court judge that there was probable cause to believe that some of the property stolen from IVAC was located at Wright's home. One of the officers who supplied information to the affiant stated that he had seen at Wright's house a tape box and labeled video tapes which matched the description of some of the

items stolen from IVAC. He also reported that the films shown at Wright's house on "Super Sunday" were included on the list of stolen films.

The information in the affidavit relating to Mathews, however, is sparse. The affidavit states that Mathews was present with Wright at IVAC following the break. It further states that Mathews' conduct did not conform to normal police practice in that he placed a call for Sergeant Hyde to report to the scene rather than Officer Glejzer, and he did not file a report of the incident immediately after the tour of duty. The only other information in the affidavit referring to Mathews is that he was overheard to say that he had given his wife a video recorder for Christmas, and that he had adult movies but that he did not bring them to the "Super Sunday" gathering because they were not the right size for Wright's machine. This information, even when coupled with the statement that a video recorder of a different size and type from Wright's recorder was stolen from IVAC, is not sufficient to provide probable cause for the issuance of a search warrant for Mathews' home. There was no evidence that Mathews' machine was the same size as any of the stolen ones.

It is not necessary in order to establish a nexus between the evidence sought and the location to be searched to rely upon direct observation, as occurred in Wright's situation. See *United States* v. *Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979). Inferences based upon the type of crime involved and the evidence sought may support a finding of probable cause to search a given location. *Commonwealth* v. *Haefeli*, 361 Mass. 271, 284-287 (1972). *United States* v. *Charest, supra* at 1017. *Grimaldi* v. *United States*, 606 F.2d 332, 338 (1st Cir.), cert. denied, 444 U.S. 971 (1979). In Mathews' case, however, the evidence that he participated in a crime is largely based upon inferences from his presence at the scene of the crime while on duty with Wright. Therefore, the situation is more tenuous than one in which there is a substantial basis for probable cause to believe that a defendant took part in a crime, and the inferences are drawn

to establish nexus alone. In the opinion of a majority of the panel the information in the affidavit involving Mathews is not sufficient to establish probable cause to search his home. See *Commonwealth* v. *Taglieri,* 378 Mass. 196 (1979); *Commonwealth* v. *Kaufman,* 381 Mass. 301 (1980).

Wright also assigns as error the denials of his requests for evidentiary hearings on certain statements contained in the affidavit, citing *Franks* v. *Delaware,* 438 U.S. 154 (1978), and *Commonwealth* v. *Nine Hundred & Ninety-two Dollars,* 383 Mass. 764 (1981). When the single justice of the Supreme Judicial Court allowed Wright's application for an interlocutory review of his motion to suppress, however, he specifically denied Wright's application for interlocutory review of the rulings on his requests for evidentiary hearings. See note 3, *supra.* Therefore, the issue is not properly before this court. See G. L. c. 278, § 28E; Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979); *Commonwealth* v. *Dunigan,* 384 Mass. 1, 2, 4 (1981).

The rulings on the motions to suppress are affirmed.

*So ordered.*