COMMONWEALTH vs. JOHN BAHAROIAN & others.[1]

No. 86-1025.

Suffolk. October 20, 1987. — November 4, 1987.

Present: DREBEN, KASS, & FINE, JJ.

*Search and Seizure,* Store, Affidavit, Warrant. *Probable Cause. Constitutional Law,* Search and seizure.

Where a police detective's affidavit, after referring to numerous citizen complaints that gaming was being conducted in a small neighborhood variety store, described police observations of patterns of behavior and activities during several days by persons entering and leaving the store and concluded, based on the officer's years of experience, that the observed activities were consistent with illegal gaming operations, the affidavit was sufficient to provide a basis for issuance of a warrant directing a search of the store and of three individuals named in the warrant. [37-38]

Although a warrant was properly issued for a police search of a small neighborhood variety store in which three named persons were allegedly conducting unlawful gaming, certain printed language in the warrant directing a search of "any person present" did not empower the police to search two persons not named or described in the warrant but present in the store, where the relatively public nature of the premises gave no reasonable basis for anticipating that everyone present was engaging in the unlawful activity. [38-40]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on October 9, 1985.

A pretrial motion to suppress evidence was heard by *John A. Pino,* J.

*Laura Callahan,* Assistant District Attorney, for the Commonwealth.

---

[1] Melvin T. Hoyt, Jr., Sidney Link, Lloyd Spearman and Harrison Jones. Baharoian is variously referred to as Baharian, Baharonian, Bahronian and Baharion. We adopt the name used in the criminal complaint and, ultimately, by counsel for the defendants.

*John J. Ruby, Jr.* (*Roger Witkin* with him) for the defendants.

KASS, J. In support of an application for a search warrant, a Boston police detective, Thomas L. Traylor, made an affidavit in which he stated the following:

A large number of citizens had complained to the police that there was gambling going on in the Avenue Variety store at 64A Blue Hill Avenue, Roxbury. The police proceeded to investigate. Two officers kept Avenue Variety under street surveillance from 6:00 A.M. to 2:00 P.M. on five days in September and October of 1985. They also entered the store several times to see what was transpiring.

People arrived at Avenue Variety by private car, MBTA bus, taxi or on foot. Generally these customers visited the shop for no more than a minute and emerged empty-handed, or carrying a newspaper or a soda. Many patrons entered the store with money or slips of paper in hand. Inventory in the store struck the officers as unusually spare and some of the canned goods were covered with a heavy film of dust. There was no telephone in the shop, yet the defendant Baharoian found it necessary from ten to twenty times each day to use a pay phone in a gas station across the street. Foot traffic each day was heaviest between 12:45 P.M. and 1:30 P.M. At various times the defendants Baharoian, Hoyt, and Link looked up and down Blue Hill Avenue appraisingly from the doorway of Avenue Variety, as if doing lookout duty. When Detective Traylor visited the store, customers had a tendency to leave without buying anything. Traylor, in his affidavit, cited years of police experience in concluding that the activity and behavior he had observed were consistent with illegal gaming operations. Each day the store closed at 1:40 P.M. (twenty minutes before post time).

Upon those facts a magistrate issued a search warrant, and the police, in their search of the store, found four cardboard boxes with note pads, betting slips, loose note pads and $564 in cash. That evidence a judge of the Boston Municipal Court, acting on motions by the defendants, suppressed. The Commonwealth has appealed under Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979).

1. *Sufficiency of affidavit in support of application for a search warrant.* As was the case in *Commonwealth* v. *Lotfy,* 8 Mass. App. Ct. 126, 127-128 (1979), there is no need to apply the *Aguilar* and *Spinelli*[2] tests to the citizen tips (there were at least twenty-five of them). We may analyze the case entirely on the basis of whether the facts developed by the police investigation supported the issuance of a warrant. *Commonwealth* v. *Lotfy, supra.* In deciding to allow the suppression motion, the Boston Municipal Court judge appeared to be moved by the innocent explanations which could be imagined for many of the activities observed, e.g., the variety store may have been a place to which persons came to socialize and at which, indeed, they bought relatively little. Establishing probable cause, however, though it requires a showing of more than suspicion, does not require evidence sufficient to warrant a conviction. *Brinegar* v. *United States,* 338 U.S. 160, 175-176 (1949). *Commonwealth* v. *Bond,* 375 Mass. 201, 210 (1978). *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982). The magistrate passing on the affidavit may draw reasonable inferences from the facts stated, *Commonwealth* v. *Burt,* 393 Mass. 703, 714 (1985), in a common sense and realistic fashion. *Commonwealth* v. *Wright,* 15 Mass. App. Ct. 245, 248 (1983), and cases cited. Generally, review of the warrant application proceeds with an indulgent eye. *Commonwealth* v. *Corradino,* 368 Mass. 411, 416 (1975).

The comings and goings (see *Commonwealth* v. *DiAntonio,* 8 Mass. App. Ct. 434, 440 [1979]); the observation of what appeared to be betting slips in the hands of customers (see *Commonwealth* v. *Wingle,* 8 Mass. App. Ct. 905, 905-906 [1979]); the increased tempo of activity and then closing of the shop near post time (see *Commonwealth* v. *Dellicolli,* 10 Mass. App. Ct. 909, 910 [1980]); the observation of consistently suggestive activity over a period of several days (*ibid.*); the scant inventory in the store; the application of the police officers' experience to the observations they had made (*Com-*

---

[2] *Aguilar* v. *Texas,* 378 U.S. 108 (1964); *Spinelli* v. *United States,* 393 U.S. 410 (1969).

*monwealth* v. *DiAntonio,* 8 Mass. App. Ct. at 440-441) — all these taken together provided a reasonable basis for believing that gaming was going on in the Avenue Variety store and that a search of the premises would produce evidence of that activity. See *Commonwealth* v. *Stewart,* 358 Mass. 747, 749 (1971); *Commonwealth* v. *DiAntonio,* 8 Mass. App. Ct. at 440. As to the premises and the three defendants named in the warrant, there was a lawful basis to conduct a search, and the suppression order should be vacated.

2. *The "any person present" phrase in the search warrant.* Two defendants, Spearman and Jones, were not specifically named in the search warrant but were searched pursuant to a printed "any person present" catch-all phrase in the warrant.[3] They protest that the facts stated in the affidavit do not provide a basis for this broad language and that, as applied to them, the search warrant was constitutionally defective as a general warrant.

What circumstances justify use of the "any person present" language in a search warrant was discussed extensively in *Commonwealth* v. *Smith,* 370 Mass. 335, 339-346 (1976). In that case information in an affidavit, obtained through periodic surveillance, described heavy traffic in heroin within the confines of an apartment. Such was the nature of the highly risky activity — dealing in hard drugs — that "participants would act in secret and to the exclusion of innocent persons . . . ." *Id.* at 343-344. It was, accordingly, unlikely that anyone inside the apartment was not in the know. A warrant directed to "any person present" was held sufficiently particularized if all persons present were almost surely participants in the illegal activity. The court in *Smith* emphasized that its opinion went to the verge and that "in the overwhelming majority of cases a search based exclusively on the somewhat vague sanction of

---

[3] The warrant commanded "an immediate search of a four story wooden building situated and numbered sixty four A in Blue Hill Avenue, Roxbury [,d]oing business as Avenue Variety [,] (occupied by John Baharian [*sic*]) and of the person of Sidney Link and Melvin Hoyt, and of any person present who may be found to have such property in his possession or under his control . . . . [A list of the property to be searched for follows.]"

the language in the 'any person present' clause is a clear violation of the proscription against unreasonable searches." *Id.* at 344. Compare *Commonwealth* v. *Snow,* 363 Mass. 778, 786-790 (1973).

Much turns, therefore, on whether the premises to be searched are small, confined and private, or relatively public. *Id.* at 345 & n.11. An "any persons present" warrant aimed at a dice game in a manhole is obviously satisfactory; if at persons in a supermarket, it just as plainly will not do. *State* v. *DeSimone,* 60 N.J. 319, 322 (1972).

Other examples from the books are instructive:

A warrant to search a shoe store for evidence of gaming did not empower Federal agents to search everyone present in the target premises. *United States* v. *Festa,* 192 F. Supp. 160, 161-163 (D. Mass. 1960). The point was that the establishment was open to the public and it was possible that a person subjected to the dragnet may have come in to buy shoes. Those considerations, i.e., accessibility and the likelihood of innocent presence, have by and large been dispositive in cases involving searches of public taverns. See, e.g., *Wilson* v. *State,* 136 Ga. App. 70, 70-71 (1975); *State* v. *Riggins,* 138 N.J. Super. 497, 499-502 (1976); *People* v. *Nieves,* 36 N.Y.2d 396, 403-406 (1975). See also *Ybarra* v. *Illinois,* 444 U.S. 85, 90-96 (1979). Somewhat more on the margin is the office area of a gas station, yet it is an area into which the quite innocent customer may wander to pay for gas, buy candy, cigarettes or soda or ask where the toilet facilities are. See *State* v. *Sims,* 75 N.J. 337, 345-349 (1978), in which the fruits of a search of unnamed persons present in the office area of a gas station were suppressed.

On the other hand, evidence obtained from persons neither named nor described in a warrant, but who were subjected to search on the strength of "any person present" language, was not suppressed in situations where it was simply not reasonable to suppose that anyone on the scene would have arrived by accident and been unaware unlawful business was going on. See, e.g., *State* v. *Hinkel,* 365 N.W.2d 774, 776 (Minn. 1985) (after hours gambling, drinking, and consumption of drugs in a

locale that masqueraded as a private house); *State* v. *DeSimone,* 60 N.J. at 322-326 (gambling transactions in an automobile). See generally the discussion in 2 LaFave, Search and Seizure § 4.5(e) (2d ed. 1987).

Even if it is a front, a neighborhood variety store is a public place which persons, in their innocence, may enter to buy a newspaper, bread, milk or a can of soup. There was not a reasonable basis for anticipating that everyone present was placing or taking a bet.

As to the evidence found on the premises or on the persons of Baharoian, Hoyt and Link, the order of suppression is vacated; as to the evidence obtained from the persons of Spearman and Jones, the order of suppression is affirmed.

*So ordered.*